**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Kenneth Lee FRIEND, Appellant.**

Superior Court of Pennsylvania.

Submitted May 26, 1998.

Filed Aug. 25, 1998.

2. These are the specific sections cited to by Carlotti in his claim that the Credit Union violated the UTP/CPL.

EAKIN, Judge:

Kenneth Lee Friend appeals from the judgment of sentence entered February 12, 1997, following his conviction of driving under the influence, (DUI), 75 Pa.C.S. Section 3731(a)(4). We affirm.

The Commonwealth's evidence included appellant's on-the-scene responses to questions of a police officer, admitting he was the driver of the car and had been drinking beer. N.T., 2/12/97, at 24, 26. In this timely direct appeal, appellant claims the court erred in admitting these statements before the *corpus delicti* of DUI was established.[1] Since the *corpus delicti* rule is a rule of evidence, our review is limited to determining whether this comprised an abuse of discretion. *Commonwealth v. Verticelli*, 550 Pa. 435, 706 A.2d 820, 822 (1998).

To establish the *corpus delicti* of this crime, the Commonwealth must show appellant drove his truck when his blood alcohol content (BAC) was .10% or higher. 75 Pa. C.S. § 3731(a)(4); *see also Commonwealth v. Zelosko*, 454 Pa.Super. 635, 638, 686 A.2d 825, 827 (1996). Appellant's statements admit the first element, driving, making them inculpatory and subject to the *corpus delicti* rule. *Verticelli, supra.*

The purpose of the *corpus delicti* rule is to guard against "the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed." *Commonwealth v. Turza*, 340 Pa. 128, 134, 16 A.2d 401, 404 (1940). Admission of such statements requires proof by a preponderance of the evidence that a crime has been committed. *Commonwealth v. Reyes*, 545 Pa. 374, 381–382, 681 A.2d 724, 727 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1445, 137 L.Ed.2d 551 (1997). That is, the evidence must be more consistent with a crime than an accident, although the possibility of an

Sanford S. Finder, Washington, for appellant.

Michael J. Fagella, Asst. Dist. Atty., Washington, for Com., appellee.

Before FORD ELLIOTT, EAKIN and MONTEMURO,* JJ.

* Retired Justice assigned to the Superior Court.

1. Appellant's brief failed to include a statement of questions involved pursuant to Pa.R.A.P. 2111(a)(3). Although this failure does not preclude appellate review, it certainly does not facilitate it.

accident[2] need not be eliminated. *Commonwealth v. Bardo*, —— Pa. ——, 709 A.2d 871, 874 (1998). The *corpus delicti* may be established by circumstantial evidence. *Reyes*, at 382, 681 A.2d at 727.

■ A higher quantum of proof is required to permit *consideration* of those statements once in evidence: The factfinder may only consider a defendant's extra-judicial statements in making the ultimate determination of guilt where the evidence as a whole, including the inculpatory statements, establishes the *corpus delicti* beyond a reasonable doubt. *Id.* "The criminal responsibility of a particular defendant does not form part of the corpus delecti, [sic] and may be proven by a confession." *Commonwealth v. Daniels*, 281 Pa.Super. 334, 340, 422 A.2d 196, 199 (1980).

■ The record discloses that about 1:15 a.m., on February 27, 1996, Pennsylvania State Police Troopers Reda and McClellan were dispatched to a "single vehicle accident" near the intersection of Route 40 and Zediker Station Road in Washington County. Trooper Reda described the scene:

A. [ ] You could see from the skid marks the vehicle was actually traveling eastbound, crossed over, you could see the skid marks clearly into the westbound lanes, and you could see where the point of impact was on the guardrail, which led right over the hill to where the truck was sitting.

\* \* \*

Q. Trooper, when you arrived at the scene, were there any people there?

A. Yes. There was [sic] approximately four to five people standing outside.

Q. How were they attired?

A. Like they were ready for bed, sweatpants, couple of nightgowns.

Q. Is that all of the people?

A. All but one, which was the defendant sitting over there. He was wearing a Carhartt jacket, baseball hat, face was bleeding.

\* \* \*

Q. He was in a Carhartt jacket, hat, normal clothing?

A. Jeans, work boots.

Q. The other people were in—

A. Like sweatpants, nightgowns, slippers.

Q. Was there anything else unusual about the defendant's appearance relative to the other people in the area?

A. Just the fact that he had a cut on his nose and it was bleeding.

\* \* \*

Q. When did you notice the defendant was bleeding?

A. He was just in a crowd of people. He was basically the tallest one sticking out of everybody.

Q. You could see that, that he was bleeding?

A. Yes.

Q. Is that before or after you asked him any questions where he spoke to you?

A. Obviously went down there, looked around, saw he was bleeding. I then asked him who was driving the car.

Q. What was the response?

A. He came forward—

\* \* \*

Q. Did you ultimately find out who [the vehicle] was registered to?

A. Yes. The vehicle was registered to Kenneth L. Friend, 346 Mowl Road, Washington, PA 15301.

Q. Were you close enough to the truck to see if it was a recent accident?

A. Yes. It was still smoking. The car was still—engine was still warm. You could see where steam or smoke was coming from the engine area.

Q. I guess you said that you got closer to the defendant. Could you see at this

---

2. Unfortunately, the term "accident" is generically used to describe vehicle crashes, regardless of their genesis. When discussing the *corpus delicti* rule, "accident" has an altogether different meaning, differentiating a mishap from a crime. DUI is a crime, not an accident, and its proof does not depend on the existence of or circumstances behind a crash; the crime does not revert to a "mere accident" because the intoxicated driving results in a crash.

point what other—what condition he was in?

A. Yes. Like I stated before, he had a cut on his nose. Speaking to him, I could detect an odor of an alcoholic beverage. He exhibited glassy, bloodshot eyes, spoke with a slurred, stuttering speech.

Q. And those indicators gave what thought to your mind?

A. That the operator was under the influence of alcohol.

N.T., 2/12/97, 13, 16–18, 20–21, 24–25.

No one saw appellant driving, but this hardly ends the issue. The above evidence shows appellant was temporally and physically proximate to the crash site. He appeared as the only candidate likely to have been the operator. Appellant was not dressed as if roused from bed, unlike all those he stood among. He had a bleeding cut on his nose, as would someone in a crash. A subsequent registration check indicated he was the owner of the wrecked pickup. This evidence strongly suggests appellant was the operator of the vehicle, and there is no evidence of record suggesting the contrary.

We next determine whether the underlying circumstances are more consistent with a crime than an accident. The only proffered accidental cause, a wet road surface, was discounted by Trooper Reda on rebuttal:

Q. [Appellant's counsel] asked you a question about the roadway being wet. Did the wetness affect your ability to travel along the roadway that night?

A. No.

Q. You were able to navigate the road safely?

A. Yes, we were.

Q. Did you go off the road, skid?

A. No. I believe we were traveling over the speed limit without emergency lights on.

Q. Did you impact upon any guardrails, telephone post?

A. No, we didn't.

* * *

Q. What was the weather like besides being in terms of coldness?

A. Coldness, it was cold enough to wear a jacket. It wasn't an unseasonably warm winter. I don't believe there was any snow on the ground or anything like that.

*Id.*, at 42–3.

While the Commonwealth need not disprove the possibility of an accident, *see Bardo, supra,* or prove intoxication caused this crash, the absence of other explanations for the crash bears on the issue. Crashes may result from many things, be they external forces such as sudden emergencies, bright sunlight or treacherous road conditions, or internal factors, such as the influence of alcohol. The present record does not support any external causes, but even if it did, Trooper Reda detected the above physical manifestations of intoxication, and the odor of alcohol coming from appellant, all of which prompted the reasonable conclusion the crash was alcohol related.

Appellant's BAC was .20%, twice the legal limit; if this contributed to the crash, and other potential explanations are not present, a determination of compliance with the *corpus delicti* rule is advanced. We can hardly say the court erred in finding the underlying circumstances more consistent with a crime than an accident.

Appellant insists this case is similar to *Verticelli, supra,* and suggests that case mandates a finding the evidence fails to establish the *corpus delicti* of DUI. We disagree. Our Supreme Court specifically limited its review in *Verticelli* to "the parameters of the closely related crime exception to the *corpus delicti* rule." *Verticelli,* at 441, 706 A.2d at 822. The court in *Verticelli* solely addressed whether Verticelli's inculpatory statements were admissible on the charge of fleeing the scene of an accident. Consequently, *Verticelli* bears little precedential value on the facts necessary to establish the *corpus delicti* of DUI. Moreover, that case involved 75 Pa.C.S. Section 3731(a)(1) rather than Section 3731(a)(4). The *corpus delicti* of DUI under the former requires evidence the operator was incapable of safe driving; here the Commonwealth need only demonstrate appellant had a BAC greater than

.10% at the time of driving. 75 Pa.C.S. § 3731(a)(4).

The facts are also distinguishable. Absent Verticelli's statements, the evidence failed to indicate whether he was operating the motorcycle at the time of the crash, or the circumstances of the crash itself. We cannot tell whether the crash involved an unexpected event, or suggested Verticelli was incapable of safe driving; evidence of the accident alone is insufficient to reach either conclusion.

The record here abounds with criminality exclusive of his admission of driving. Appellant had a BAC of .20%, and owned the truck that *someone* had recently driven through the guardrail. He was at the scene when police arrived to find his truck over the hill, steam still rising from the engine. Unlike all other bystanders, appellant was not dressed for bed. He alone had injury as if from a crash. As the trooper indicated, he was "sticking out," for reasons other than his height. The conclusion he had been driving clearly was not based solely on his admission; the proof here went far beyond his inculpatory statement.

The only factually supported cause of the crash was a loss of control due to intoxication of the person who was obviously the driver. Thus, contrary to *Verticelli*, the independent evidence here is more consistent with a crime than an accident.

■ Appellant further claims the timing of his statements rendered them inadmissible, as Trooper Reda "had no evidence at the time of asking the question, ["Who was driving?"] that there was any crime that was committed." Appellant's Brief, at 8. This argument misses its mark. The *corpus delicti* rule is not one of constitutional dimension, dealing with the quantity of evidence known at the time of the statement, nor is it a question of custody or investigative permissibility. The rule is one of trial evidence. It is not designed to circumscribe the gathering of evidence. Its applicability turns on the quantity of evidence, not the order of its gathering.

■ We find the evidence adequately demonstrates the *corpus delicti* for DUI. Ad-

mission of the statements by the learned trial court was properly based on proof of the *corpus delicti* by a preponderance of the evidence. The jury's consideration of those statements was based on proof of the *corpus delicti* beyond a reasonable doubt. That appellant's admissions were introduced before the *corpus delicti* was completely satisfied is immaterial, as the Commonwealth ultimately fulfilled that burden. *See Zelosko*, at 638, 686 A.2d at 827.

Judgment of sentence affirmed.