J-S94015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID ADKINS | |
| Appellant | No. 160 MDA 2016 |

Appeal from the Judgment of Sentence February 24, 2015
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0003343-2013

BEFORE: LAZARUS, J., RANSOM, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:       **FILED FEBRUARY 21, 2017**

David Adkins appeals from the judgment of sentence, entered in the Court of Common Pleas of Cumberland County, following his convictions for arson endangering persons,[1] arson endangering property,[2] and criminal mischief.[3] Upon review, we affirm.

The trial court summarized the relevant facts of this matter as follows:

On March 17, 2013, at the Shippensburg Mobile Estates, a mobile home park located within Cumberland County, a fire occurred in the early morning hours that subsequently led to the arrest and prosecution of [Adkins] on charges of [a]rson

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3301(a)(1)(i).

[2] 18 Pa.C.S. § 3301(c)(1).

[3] 18 Pa.C.S. § 3304(a)(1).

[e]ndangering [p]ersons, [a]rson [e]ndangering [p]roperty, and [c]riminal [m]ischief that involved the property known as 116 Shippensburg Mobile Estate, Shippensburg Township, owned by Cheryl Barrick. Ms. Barrick was or had been the inamorata of [Adkins] and was just one of many of [Adkins'] perceived paramours. On the evening of March 16, Ms. Barrick had texted her male neighbor [with whom Ms. Barrick also had a relationship] to advise him to the effect that there [was] somebody going by [his] house that look[ed] suspicious.

On the evening of March 16, 2013, [Adkins] was at a bar with the adult son (Terrence) of one of his paramours, one [with] whom he also had a child, and Terrence's girlfriend (Kady), who essentially was the designated driver for the evening. At the conclusion of their night of drinking, [Adkins] instructed Kady to drive her now[-]highly[-]intoxicated boyfriend Terrence and himself to the Shippensburg Mobile Estates. [Adkins] directed her to drive specifically to the Barrick property at which time he got out of the vehicle and disappeared behind the mobile home. [Adkins] shortly thereafter reappeared in a hurry to get away while Kady was attending to her retching boyfriend. Kady drove away but prior to exiting the mobile home park, [Adkins] directed her to stop and he turned and looked back at the Barrick residence, waited and then instructed her to leave. [Adkins] directed Kady to drive all of them to another paramour's home, Kathy, which Kady did and is where Kady spent the remainder of the early morning hours tending to Terrence. Kady later asked [Adkins] about the evening and was specifically directed by [Adkins] that they were not together, [and that] nothing happened.

Kathy, upon receiving the phone call from [Adkins] that he, along with Kady and Terrence, were on their way to her residence, and not wanting confrontation, had her then[-] companion, David vacate the residence. David did so but stayed nearby and witnessed the outside interaction. Kathy described [Adkins'] appearance and odors to the jury as well as his admission that he was in trouble for [doing] something bad to the Barrick[s'] residence.

A Shippensburg Mobile Estate resident, Terry Smith, who was out allowing his dog to relieve itself, witnessed the flames coming from the mobile home and called 911. Mr. Smith, knowing that Ms. Barrick had young children and fearing that they may still be inside the mobile home, attempted a rescue

but found no one inside the burning mobile home. Ms. Barrick had gone to the home of her cousin who lived down the road. Ms. Barrick had warned another resident of the mobile home park that someone was watching the home and that this other resident should be on notice. The other resident was a male with whom Ms. Barrick was also involved in relations.

The fire investigation detailed the origin of the fire to be in Ms. Barrick's bedroom, specifically at the mattress and box spring where a kerosene lantern was found in the remnants of the bed set. Further, the investigation revealed the nature and location of the fire origin and deemed it arson, the details of the investigation, and the response of firefighters on the scene. In addition to the fire investigation, a forensic analyst detailed the usage of a cell phone, known to belong to [Adkins], on March 16 and 17, 2015, together with its corresponding locations in the area of the Shippensburg Mobile Estates. A fire expert was called by defense; the expert could not definitively rule out arson but challenged the Commonwealth forensic collection techniques and opined that more investigation was required to deem this an intentionally set fire.

Trial Court Opinion, 12/28/15, at 2-4.

A jury trial was held beginning on December 1, 2015, after which Adkins was found guilty of the aforementioned charges on December 5, 2015. The court sentenced Adkins on February 24, 2015, to an aggregate sentence of 7 to 22 years' incarceration. Adkins filed timely post-sentence motions seeking an arrest of judgment, a new trial, a modification of sentence, and to merge his sentence for arson endangering property with the sentence for arson endangering persons, all of which were denied on December 28, 2015.

On January 27, 2016, Adkins filed a timely notice of appeal. The court ordered him to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Adkins filed on March 18, 2016,

following two extensions of time. On appeal, Adkins raises the following issues for our review:

> 1. Whether the trial court abused its discretion and misapplied the law when it failed to grant [Adkins'] motion for arrest of judgment because the Commonwealth failed to establish a *corpus delecti* for the arson charges where the evidence showed that the cause of the fire was equally consistent with both accidental and criminal conduct?
>
> 2. Whether the trial court abused its discretion when it allowed the Commonwealth to introduce evidence related to separate attempted arson charges against [Adkins], when those charges, upon motion from the Commonwealth, were severed into a separate trial?

Brief for Appellant, at 7.

Adkins first argues that the Commonwealth failed to establish a *corpus delecti* for the crime of arson, and therefore, the trial court improperly admitted incriminating statements made by Adkins. As this Court has summarized:

> The *corpus delecti* rule is an evidentiary one. On a challenge to a trial court's evidentiary ruling, our standard of review is one of deference. The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.
>
> Pennsylvania law precludes the admissibility of a confession absent proof of the *corpus delecti*, literally the body of a crime. However, the rule is not a condition precedent to the admissibility of the statements of an accused. Rather, the rule seeks to ensure that the Commonwealth has established the occurrence of a crime before introducing the statements or confessions of the accused to demonstrate that the accused

- 4 -

committed the crime. The rule was adopted to avoid the injustice of a conviction where no crime exists.

Only inculpatory statements fall within the scope of the *corpus delecti* rule. Before such a statement may be admitted into evidence, the Commonwealth must establish: 1) a loss has occurred and 2) the loss occurred as a result of criminal activity. Only then may the Commonwealth introduce a statement to show that the defendant is responsible for the loss. For the purpose of admission, the *corpus delecti* may be established by a preponderance of the evidence. Moreover, the Commonwealth may establish the *corpus delecti* with circumstantial evidence.

*Commonwealth v. Herb*, 852 A.2d 356, 362-63 (Pa. Super. 2004) (quotation marks and citations omitted). Importantly, "the *order of proof* is a matter within the realm of (the trial judge's) judicial discretion which will not be interfered with in the absence of an abuse thereof." *Commonwealth v. Smallwood*, 442 A.2d 222, 225 (Pa. Super. 1982) (emphasis added).

As an initial matter, we note that the Commonwealth argues that Adkins waived the *corpus delecti* issue by failing to raise the issue in the trial court. **See** Pa.R.A.P. 302 ("[I]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."). In **Commonwealth v. Chambliss**, 847 A.2d 115 (Pa. Super. 2004), a defendant first acknowledged the existence of a *corpus delecti* issue after both the defense and Commonwealth rested their cases. The trial court ruled that the objection was untimely, and this Court affirmed, stating: "[a]s Appellant did not raise any objection to the Commonwealth's admission of this evidence during the Commonwealth's presentation of this evidence, we do not find that Appellant has properly preserved a challenge to the admissibility of the

confession." *Id.* at 121. *See* Pa.R.E. 103 (appellant may not predicate claim of error on ruling that admits evidence unless timely objection, motion to strike or motion *in limine* appears on record and states specific ground of objection). Our review of the record shows that Adkins never moved to suppress the statements prior to trial on the basis of *corpus delecti*, and he failed to object to the admission of his statements at trial. Rather, Adkins first raised the *corpus delecti* issue in a post-sentence motion. Accordingly, the *corpus delecti* issue has been waived.

Even if Adkins had properly preserved a *corpus delecti* objection, the claim is without merit because the Commonwealth established the *corpus delecti* of arson. Adkins correctly states, "[t]o establish the *corpus delecti* of arson, the Commonwealth needed to show (1) that a fire occurred, and (2) that it had an incendiary origin." *Commonwealth v. Moyer*, 419 A.2d 717, 719 (Pa. Super. 1980) (citation omitted). Inculpatory statements are properly admitted if the Commonwealth demonstrates by a preponderance of the evidence that the crime in fact occurred. Adkins specifically contends that the Commonwealth failed to prove that the fire that engulfed Ms. Barrick's mobile home was of an incendiary origin before introducing evidence of Adkins' inculpatory statements.

Instantly, the Commonwealth offered evidence that the fire at Ms. Barrick's home was of an incendiary origin through multiple lay witnesses and expert witnesses. Eyewitnesses Kady Descheemaeker and Terrence Wolf placed Adkins at the scene of the crime with his ill-will and motive

absent his inculpatory statements. Fire Chief Clyde Tinner ruled the fire "intentional" at the time of his investigation and before ever hearing of Adkins. He also ruled out an "accidental" or "electrical" fire. Dennis Woodring, a fire and explosives investigator, testified that his K-9 alerted him to liquid accelerants four times in the area of the bed where it was determined the fire originated. Trooper Bradley Dunham, the investigating fire marshal, testified that the fire was caused by direct flame contact on the bed, but not necessarily a flame from the oil lamp. He also ruled out unintentional and/or accidental causes such as smoking, candle use, or electrical issues.

Adkins relies on these investigations and the fact that lab testing was unable to identify the flammable liquids detected by the K-9 in arguing that the fire was not intentionally set. However, Jessica Mulhollem, the forensic scientist who conducted the testing, testified that it is not uncommon for K-9s to detect liquids consumed by a fire to the point where they cannot be detected by the lab.

It is important to note that Adkins also offered a qualified expert witness who testified that he could not determine whether the cause of the fire was accidental or intentional based on photos of the scene and the lab reports. However, with regard to the admissibility of evidence, the *corpus delecti* rule only requires that the Commonwealth prove that a crime actually occurred by a preponderance of the evidence, or more simply, that the Commonwealth prove that "the evidence is more consistent with a crime

than an accident . . . to admit the statements." ***Commonwealth v. Reyes***, 681 A.2d 724, 729 (Pa. 1996). Because the Commonwealth proved by a preponderance of the evidence that the crime of arson occurred, the trial did not abuse its discretion when it admitted Adkins' inculpatory statements. ***Id.*** Therefore, Adkins' argument fails.

Adkins' second claim is that the trial court abused its discretion when it allowed the Commonwealth to introduce evidence related to a separate attempted arson charge at a neighbor's home. As our Supreme Court has summarized:

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

***Commonwealth v. Sherwood***, 982 A.2d 483, 497 (Pa. 2009) (citations omitted).

Specifically, Adkins asserts that the trial court erred by admitting into evidence testimony of Ms. Barrick's warning to her neighbor about impending danger and testimony from investigators about the evidence they collected at the scene from an earlier attempted arson at that neighbor's home. The Commonwealth introduced evidence of the separate attempted arson charge in order to show Adkins' motive for burning down Ms. Barrick's

home. The separate attempted arson occurred just hours prior to the fire at Ms. Barrick's home, and the victim of the prior act was in a relationship with Ms. Barrick, sparking Adkins' anger at the pair. This is further corroborated by the fact that the fire in Ms. Barrick's home originated on her bed. As the trial judge summarized: "how much more symbolic can one get than to burn the bed of one's inamorata for perceived infidelity." Trial Court Opinion, 5/6/16, at 5. Lastly, the two crime scenes are so close to one another that the two victims' backyards touch. N.T. Trial, 12/2/14, at 7.

In consideration of Adkins' timely objection, the trial judge limited the evidence to testimony only and barred photographs of the attempted arson scene from being admitted into evidence, explicitly explaining in a sidebar: "I am trying not to distract the jury from anything." N.T. Trial, 12/3/14, at 7. Additionally, the trial judge gave the following instructions to the jury regarding motive:

> Motive for the crime of arson and criminal mischief is not an element of either offense. In filtering the evidence for you, you may have heard evidence of motive. The Commonwealth does not have to prove motive. However, you may consider evidence of motive or lack thereof.
>
> Knowledge of human nature tells us that an ordinary person is more likely to commit a crime if he had a motive than if he has none. You should weigh and consider the evidence tending to show motive or absence thereof with all the other evidence in deciding whether the Defendant is guilty or not guilty. It is entirely up to you to determine what weight should be given the evidence concerning motive.

N.T. Trial 12/5/14, at 69.

As made clear by the record, the evidence of the attempted arson was limited by the trial judge and that which was introduced was simply to show Adkins' motive. We, therefore, conclude that the probative value of the evidence outweighed any potential for prejudice, and the trial court did not abuse its discretion in admitting the evidence. **Sherwood**, **supra**.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/21/2017