J-S44021-25

2026 PA Super 40

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
HAROLD JOEL LASSENDS :
:
Appellant : No. 3391 EDA 2024

Appeal from the Judgment of Sentence Entered November 21, 2024
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0000168-2024

BEFORE:  LAZARUS, P.J., DUBOW, J., and SULLIVAN, J.

OPINION BY DUBOW, J.:                          **FILED MARCH 2, 2026**

Appellant, Harold Joel Lassends, appeals from the November 21, 2024 judgment of sentence of four to eight years of incarceration entered in the Lehigh County Court of Common Pleas following his conviction by a jury of Persons Not to Possess Firearms.[1]  Appellant challenges an evidentiary ruling made by the trial court and the sufficiency of the evidence supporting his conviction.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  On August 31, 2023, Officer Daniel Detrick observed Appellant and two other men sitting on milk crates in an isolated area behind the A-1 Convenience Store in downtown Allentown.  The convenience store was closed at the time, and the men were sitting about five feet from the rear of the convenience store building.  The men were dressed in dark clothing and wore black face masks.

---

[1] 18 Pa.C.S. § 6105(a)(1).

Officer Detrick called Officer Sloan and Officer Vilck[2] to the scene, and the officers approached the men. While Appellant was speaking to Officers Sloan and Vilck, Officer Detrick noticed a clear baggie located three feet away from where Appellant was standing. Officer Detrick discovered that the baggie contained thirteen live bullets. The officers conducted a pat-down search of the three men and found no weapons or contraband. The officers then permitted the men to leave the scene.

The officers remained on the scene and searched for a firearm. Officer Vilck, while standing on the milk crates, observed a firearm on the sloped roof of the convenience store, approximately seven to eight feet from the ground. The firearm's magazine contained seven live bullets. The firearm was "shiny" and Officer Detrick testified that he "didn't see any dust, water, [or] any kind of grime on it," indicating that the gun had been recently placed on the roof. N.T. Trial, 9/9/24, at 58.

After discovering the handgun, the officers responded to a call about a nearby physical altercation involving Appellant, and arrested Appellant. After Appellant signed a written waiver of his **Miranda**[3] rights, Officer Detrick interviewed Appellant, and Appellant admitted to possessing the handgun found on the roof. Appellant stated that another individual had provided him with the handgun and bag of bullets. Appellant stated that he tried to conceal

_____

[2] The full names of the officers are not part of the certified record.

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

the handgun when he saw the officers approaching and threw it on the roof. He explained that he also tried to throw the bag of bullets on the roof, but the bag fell on the ground instead. Following the interview, Appellant also provided a written statement admitting that he possessed the handgun.

On September 6, 2024, Appellant filed a motion *in limine* to preclude admission of his oral and written statements, arguing that the Commonwealth could not establish the *corpus delicti* for the charged offense independent of Appellant's inculpatory statements. After a hearing, the trial court denied the motion.

On September 9, 2024, Appellant proceeded to a jury trial. At trial, the parties entered a stipulation that Appellant had previously been convicted of an offense that prohibited him from possessing a firearm under Pennsylvania law. Appellant testified at trial and recanted the admissions he had made during the police interview, instead testifying that he knew nothing about the firearm. Appellant testified that Officer Detrick had pressured Appellant into admitting that Appellant had tossed the firearm on the roof by promising Appellant a quick release from jail if Appellant confessed.

On September 10, 2024, the jury convicted Appellant of Persons Not to Possess Firearms. On November 21, 2024, the court sentenced Appellant to four to eight years of incarceration. This timely appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Whether the [t]rial [c]ourt abused its discretion in admitting Appellant's statement to police into evidence at [t]rial as the Commonwealth failed to prove the *corpus delicti* of the crime of Persons Not to Possess Firearms by a preponderance of the evidence?

2. Whether the evidence presented at [t]rial was insufficient as a matter of law to sustain [Appellant's] conviction in that the Commonwealth failed to prove the *corpus delicti* of the crime of Persons Not to Possess Firearms beyond a reasonable doubt and no independent evidence corroborates possession of the weapon by Appellant?

Appellant's Br. at 4.

We review challenges to the trial court's *corpus delicti* determinations for abuse of discretion. *See Commonwealth v. Murray*, 174 A.3d 1147, 1154 (Pa. Super. 2017). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill will, or partiality, as shown by the evidence or the record." *Commonwealth v. Bullock*, 170 A.3d 1109, 1117 (Pa. Super. 2017) (citation omitted).

*Corpus delicti*, or the "body of the crime," requires the Commonwealth "to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted." *Murray,* 174 A.3d at 1154 (citation omitted). "This rule is rooted in the hesitancy to convict a person of a crime solely on the basis of that person's statements." *Bullock*, 170 A.3d at 1117 (citation omitted). "The *corpus delicti* may be established by circumstantial evidence." *Commonwealth v. Young*, 904 A.2d 947, 956 (Pa. Super. 2006) (citation omitted).

- 4 -

Application of the *corpus delicti* rule is a two-step process, where the first step concerns the trial court's admission of the statements, and the second step concerns the fact-finder's consideration of those statements:

> (1) In the first phase, the court determines whether the Commonwealth has proven the *corpus delicti* of the crimes charged by a preponderance of the evidence. If so, the confession or extrajudicial statement of the defendant is admissible;
>
> (2) In the second phase, the rule requires that the Commonwealth prove the *corpus delicti* to the factfinder's satisfaction beyond a reasonable doubt before the fact[-]finder is permitted to consider the confession or extrajudicial statement in assessing the defendant's innocence or guilt.

**Bullock**, 170 A.3d at 1118 (citations and internal quotation marks omitted).

For the first step of the *corpus delicti* analysis "the evidence need only be more consistent with a crime than with an accident." **Commonwealth v. Hernandez**, 39 A.3d 406, 412 (Pa. Super. 2012) (internal quotation marks and emphasis omitted). For the second step of the analysis, "before the case is submitted to the jury the trial court is required to instruct the members of the jury that they must first be convinced beyond a reasonable doubt of the existence of the *corpus delicti* before they may consider an admission of or a confession by an accused as evidence of the guilt of the accused." **Commonwealth v. Fried**, 475 A.2d 773, 781 (Pa. Super. 1984) (holding that reversible error occurred where trial court failed to instruct jury that they must first be convinced beyond a reasonable doubt of the existence of the *corpus delicti* before considering admission). "If it satisfies [the jury] beyond a reasonable doubt that a crime has been committed, then they are at liberty

to give the confession such weight as it is entitled to, taking into view the circumstances surrounding it, and the extent to which it has been corroborated." *Id.* (citation and emphasis omitted).

In Appellant's first issue, he asserts that the trial court erred in admitting his inculpatory statements because the Commonwealth failed to prove the *corpus delicti* of the crime charged by a preponderance of the evidence. Appellant's Br. at 10-15. He argues that "[i]t is not more probable that a crime was committed than not" because any person could have placed the firearm on the roof, nothing about the outward appearance of the firearm indicated it was illegal, and "[t]he only evidence that the firearm was **criminally** possessed was [Appellant's] statement to police." *Id.* at 12, 14 (emphasis in original).

Appellant analogizes his circumstances to those in ***Commonwealth v. Harper***, 230 A.3d 1231 (Pa. Super. 2020), in which officers responded to a report of a shooting, but upon arrival found no one present at the scene. A short time later, officers interviewed Harper at the hospital where he was being treated for a gunshot wound, whereupon Harper admitted to carrying a gun that night. *Id.* at 1241. The trial court convicted Harper of Persons Not to Possess Firearms and Firearms Not to be Carried Without a License. On appeal, Harper successfully demonstrated that his trial counsel was ineffective for failing to object to Harper's inculpatory statements at trial pursuant to the *corpus delicti* rule. *Id.* at 1240-41. Specifically, this Court concluded that the Commonwealth had not established a nexus connecting Harper to the body of

the crime. *Id.* at 1241. Appellant's case, however, is readily distinguishable from *Harper*. In *Harper*, "there was not a scintilla of evidence connecting [Harper] to the scene of the underlying shooting, [] or the particular shooting itself." *Id.* at 1240-1241. Unlike *Harper*, here the police officers observed Appellant in close proximity to both the firearm and the bullets and recovered the recently-concealed firearm immediately after Appellant left the scene.

The trial court found Appellant's statements admissible after concluding that, given the undisputed facts and circumstances of the cases, it was "more likely than not that the loaded .380 caliber handgun did not end up on the roof of a closed convenience store in Allentown by accident, but rather had been intentionally tossed or placed on the roof in order to conceal it, clearly suggesting that the person who placed the handgun on the roof did not lawfully possess it." Trial Ct. Op., 3/17/25, at 9.

Following our review, we agree with the trial court's conclusion. The Commonwealth's evidence established that the officers found a baggie containing live bullets close to where the three men were sitting. The officers, while searching the area, discovered the firearm concealed on the roof near where the men had been sitting and the condition of the firearm indicated that it had been recently placed there. Based on these facts, we conclude that the trial court did not abuse its discretion in finding that the evidence presented was more consistent with a crime than an accident, because the evidence suggested that the men placed the firearm on the roof in order to conceal it

because it was illegally possessed. The trial court, therefore, did not err when it admitted Appellant's inculpatory statements.

In Appellant's second issue, he asserts that the evidence was insufficient to sustain his conviction. Appellant's Br. at 15-19. He invokes the second phase of the *corpus delicti* analysis to argue that this Court must exclude Appellant's inculpatory statements when evaluating the sufficiency of the evidence. *Id.* at 18-19. Specifically, he argues that we cannot consider the inculpatory statements because "in order for the statement[s] to be considered by the fact-finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt." *Id.* at 15.

We review claims regarding the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Melvin*, 103 A.3d 1, 39 (Pa. Super. 2014) (citation omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018). "[W]e may not reweigh the evidence or substitute our own judgment for that of the fact finder." *Commonwealth v. Juray*, 275 A.3d 1037, 1042 (Pa. Super. 2022) (citation omitted). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary."

*Commonwealth v. Brooker*, 103 A.3d 325, 330 (Pa. Super. 2014) (citation omitted).

Generally, when reviewing the sufficiency of the evidence, this Court must consider all the evidence from trial, "even improperly-admitted evidence." *Commonwealth v. Haynes*, 116 A.3d 640, 656 (Pa. Super. 2015). "The question of sufficiency is not assessed upon a diminished record." *Commonwealth v. Smith*, 568 A.2d 600, 603 (Pa. 1989) (citing decades of authority).

We decline to interpret the second phase of the *corpus delicti* analysis as a limit on the scope of our review of a sufficiency challenge. In *Commonwealth v. Reyes*, our Supreme Court **separately** analyzed the issue of sufficiency and the issue of whether the Commonwealth proved the *corpus delicti* of the crime beyond a reasonable doubt. 681 A.2d 724 (Pa. 1996). The Court commenced its review by addressing the sufficiency of the evidence, and, in so doing, considered Reyes's confession to the crime. *Id.* at 726-27. After finding the evidence sufficient to support Reyes's conviction, the court separately addressed the *corpus delicti* issue. *Id.* at 727. The Court restated the two steps of the *corpus delicti* analysis and agreed with Reyes that the trial court had applied the incorrect standard for considering his out-of-court statements. *Id.* at 730.[4]

_____

[4] **Reyes** clarified that the second phase of the *corpus delicti* analysis implicates the propriety of the "trial judge's charge to the jury." 681 A.2d at 728-29.
*(Footnote Continued Next Page)*

In sum, the *corpus delicti* "analysis aligns with an evidentiary issue, for which the remedy is a new trial [and] does not comport with a sufficiency claim, which results in discharge if successful." **Commonwealth v. Torner**, 2025 WL 1905486 at *5 (Pa. Super. July 10, 2025) (unpublished memorandum opinion), pet. for allowance of appeal filed, 398 MAL 2025.[5] Notably, the Supreme Court in **Reyes** considered **all** evidence from trial when it reviewed the sufficiency of the evidence, and we, therefore, now proceed to do so.

The Commonwealth charged Appellant with Persons Not to Possess Firearms. "In order to obtain a conviction under 18 Pa.C.S. § 6105, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a firearm[.]" **Commonwealth v. Thomas**, 988 A.2d 669, 670 (Pa. Super. 2009).[6] The Crimes Code defines possession as "an act, within the meaning of this section, if the possessor knowingly procured or received

_____

Here, the trial court properly instructed the jury regarding the doctrine of *corpus delicti* in its closing instructions and provided the jury with a written copy for use during deliberations. **See** N.T. Trial, 9/10/24, at 119 ("You may not consider these oral and written statements as evidence against the defendant unless you find beyond a reasonable doubt that a crime was committed."). On appeal, Appellant does not challenge the trial court's jury instructions.

[5] **See** Pa.R.A.P. 126(b) (providing that unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

[6] The other requirements of the statute are not at issue on appeal as the parties stipulated at trial that Appellant had a disqualifying prior offense and that the recovered handgun was a "firearm" as defined in the statute. **See** 18 Pa.C.S. § 6105.

- 10 -

the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession." 18 Pa.C.S. § 301(c).

A trier of fact may find that a defendant actually possessed contraband or did so constructively. *See Parrish*, 191 A.3d at 36. Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. *See Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013). "We have defined constructive possession as conscious dominion[,]" meaning that the defendant has "the power to control the contraband and the intent to exercise that control." *Id.* (citation omitted). "To aid application, we have held that constructive possession may be established by the totality of the circumstances." *Id.* (citation omitted). "[A]s with any other element of a crime, constructive possession may be proven by circumstantial evidence." *Parrish*, 191 A.3d at 36-37 (citation omitted).

Following our review of the evidence, we find that the Commonwealth presented sufficient evidence that Appellant constructively possessed the firearm. Appellant, wearing dark clothes and a black face mask, was standing by the baggie of bullets found on the ground and in close proximity to the roof where the handgun was eventually located. Appellant admitted that he was in possession of the firearm and threw it on the roof when he observed police officers approaching. Viewing the evidence in the light most favorable to the Commonwealth and affording the Commonwealth all favorable inferences which may be drawn from the evidence, it was reasonable for the jury to infer

from the totality of the circumstances that Appellant constructively possessed the firearm prior to the arrival of the police officers. We, therefore, affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/2/2026