J-A24002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| OROBOSA ENAGBARE | |
| Appellant | No. 785 EDA 2016 |

Appeal from the Judgment of Sentence September 21, 2015
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0002279-2012

BEFORE:  BOWES, OTT AND SOLANO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 08, 2017**

Orobosa Enagbare appeals from the judgment of sentence of four and one-half years to nine years of incarceration, followed by a consecutive period of five years probation, imposed after a jury convicted him of, *inter alia*, rape of an unconscious person.  We affirm.

On the evening of May 26, 2012, the victim, a female college student, went to a bar in West Chester to celebrate the end of the semester.  She sent text messages inviting most of the people she knew, including Appellant, to join her.  The group consumed alcohol throughout the evening and danced.  Sometime between 1:45 a.m. and 2:00 a.m., Appellant asked the victim if she would like to be walked home.  The victim accepted the offer.  The two left the bar by themselves and began the walk back to her apartment, which was approximately fifteen minutes away.

Due to her intoxication, the victim's recollection of the details of what next occurred was somewhat hazy. She recalled walking with Appellant, entering her residence, and changing her clothes. The next thing she remembered is waking up and experiencing vaginal pain. She saw Appellant on top of her and felt his penis inside her. She told him to stop, and attempted to push him away. Appellant did not stop, and she again fell asleep. She testified that she did not consent to sex at any point.

Around 9:00 a.m., the victim awoke with vaginal pain and told a friend she had been raped. She proceeded to a hospital, where an examination was performed and evidence collected for a rape kit. A police officer told the victim to contact Detective Stan Billie.

On May 29, 2012, the victim contacted Detective Billie, who initiated an investigation. The victim agreed to call Appellant and have that conversation recorded. Two separate recorded phone calls were played to the jury, which reveal the following facts. The victim asked Appellant if he remembered what happened on the 26th. Appellant initially stated that she invited him in and that they kissed for a few minutes, but she fell asleep so he carried her upstairs and left. She told him something more must have happened. Appellant again denied that anything happened. When the victim revealed that she remembered seeing him on top of her, and told him to stop lying. Appellant then stated, "I just f---ed up," and told the victim that he used a condom which he took with him and threw away in a public

trashcan. When Appellant was asked if he thought about stopping when she tried to push him off, he said no and admitted that he continued to have sex with her for five to ten more minutes. Appellant said, "I'm saying I f---ed up and I mean, I know obviously it wasn't consensual. It was never consensual. None of it was okay." N.T. Vol. I, 5/12/15, at 158.

Based on this incident, Appellant was charged with rape by forcible compulsion, rape of an unconscious person, sexual assault, and aggravated and indecent assault. Appellant proceeded to a jury trial on February 11, 2013, which resulted in a mistrial on February 13, 2013. The mistrial was granted at Appellant's request, after the trial court determined that the Commonwealth violated **Brady v. Maryland**, 373 U.S. 83 (1963).

On or about February 28, 2013, counsel filed a motion to bar retrial, averring that the Commonwealth's failure to provide the **Brady** material constituted prosecutorial misconduct.[1] The trial court held a hearing, and issued an order denying the motion on March 26, 2013.[2]

On April 9, 2013, Appellant filed a motion to suppress a statement given by Appellant to Detective Billie, which was granted on April 30, 2013

_____

[1] This motion was not docketed until March 20, 2013. The certified March 20, 2013 filing includes a fax from Appellant's counsel stating that the judge's chambers informed counsel that the motion was never docketed. We note that a March 18, 2013 postponement is in the certified record stating, "motion to bar re-trial pending."

[2] The transcript of this hearing is not in the certified record.

after an evidentiary hearing. The Commonwealth, pursuant to Pa.R.A.P. 311(d), certified that the order would terminate or substantially handicap its prosecution and appealed; we affirmed on April 17, 2014. *Commonwealth v. Enagbare*, 102 A.3d 535 (Pa.Super. 2014) (unpublished memorandum). The Commonwealth sought review with our Supreme Court, which denied that request on September 30, 2014. *Commonwealth v. Enagbare*, 101 A.3d 101 (Pa. 2014). The court of common pleas received the record on October 29, 2014. Thereafter, the matter was continued several times.

On or about May 6, 2015, Appellant sought dismissal pursuant to the prompt-trial provisions outlined in Pa.R.Crim.P. 600.[3] The trial judge addressed that motion[4] and several other pre-trial matters on May 11, 2015, immediately prior to jury selection.

The second jury trial commenced on May 12, 2015. On May 15, 2015, Appellant was acquitted of rape by forcible compulsion and convicted of the remaining offenses. Appellant's bond was revoked and sentencing was

---

[3] Rule 600 requires the Commonwealth to try a criminal defendant within 365 days from the date that the criminal complaint is filed. Following filing of the criminal complaint Rule 600 was revised, with the current version effective July 1, 2013. The order granting the mistrial predates the July 1, 2013 enactment. We therefore apply the prior version of Rule 600 to the facts of this case. *See Commonwealth v. Wilson*, 145 A.3d 194, 195, n.2 (Pa.Super. 2016) (applying version of Rule 600 in effect on date matter was remanded from Superior Court for further proceedings).

[4] This motion was never docketed. The Commonwealth's brief states that its office received a copy and does not contest its filing. Its omission is not an impediment to our review due to the nature of the claim.

deferred to September 21, 2015, whereupon Appellant received the above-referenced sentence.

Appellant timely filed post-sentence motions and a notice of appeal following their denial. Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925 and the matter is ready for our review. Appellant poses the following questions for our consideration:

I. Did the lower court err in denying Appellant's motion to dismiss the charges pursuant to Pennsylvania Rule of Criminal Procedure 600 where the Commonwealth failed to exercise due diligence in bringing Appellant to trial?

II. Did the lower court err in denying Appellant's motion to dismiss and bar retrial on the grounds of double jeopardy where the Commonwealth's withholding of exculpatory evidence was only one instance of prosecutorial misconduct and Appellant has demonstrated that the Commonwealth engaged in a pattern of misconduct designed to deprive him of a fair trial?

III. Did the lower court violate the *corpus delecti* rule when it admitted Appellant's inculpatory wiretap conversations into evidence where the Commonwealth failed to establish that a crime had occurred by a preponderance of the evidence and where it allowed the jury to consider Appellant's admissions during its deliberations even though the Commonwealth had failed to prove that a crime had occurred beyond a reasonable doubt?

IV. Were Appellant's convictions supported by the clear weight of the evidence where the complainant's trial testimony was contradicted by her statements to the police and at a previous trial?

Appellant's brief at 5-6 (first two issues reordered for ease of discussion).

Since Appellant's Rule 600 arguments are incorporated in his double jeopardy claim, we elect to address it first. Our standard and scope of review in evaluating Rule 600 issues is well-settled. We determine

whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.

*Commonwealth v. Armstrong*, 74 A.3d 228, 234 (Pa.Super. 2013) (citing *Commonwealth v. Ramos*, 936 A.2d 1097, 1099 (Pa.Super. 2007) (*en banc*) (alterations in original due to rule renumbering)). "The proper application of discretion requires adherence to the law, and we exercise plenary review of legal questions." *Commonwealth v. Baird*, 975 A.2d 1113, 1118 (Pa. 2009) (citing *Commonwealth v. Chamberlain*, 731 A.2d 593, 595 (Pa. 1999)).

Since Appellant was on bail during the first trial, the pertinent provision of Rule 600 required the Commonwealth to commence Appellant's trial within 365 days of the order granting the mistrial. *See* Former Rule

600(D)(1).[5] The first step is calculating the 'mechanical run date,' which is arrived at by adding 365 days to the date of the order granting the mistrial. *Commonwealth v. Goldman*, 70 A.3d 874, 879 (Pa.Super. 2013). Therefore, trial was required to commence within one year of February 13, 2013 (on or before February 13, 2014). Appellant filed the motion to dismiss on or about May 6, 2015.

Since trial did not commence within the mechanical run date, we must determine whether the trial occurred within the adjusted run date. To calculate the adjusted run date, we add all periods of delay caused by the defendant which were statutorily excluded from the speedy-trial computation. *See* Former Rule 600(C)(1)-(3) (effective until July 1, 2013). Our precedents interpreting the former Rule also added periods of "excusable delay." This concept was derived from former Rule 600(G), which

> includes an explicit exception, neither explicitly nor implicitly included in Rule 600(E). The additional language provides the Commonwealth with the ability to obtain what this Court ... termed to be "an extension" of the 365–day time limit, as opposed to a Rule 600(C) "exclusion," to the extent the Commonwealth has exercised due diligence such that

_____

[5] "When a trial court has granted a new trial and no appeal has been perfected, the new trial shall commence within 120 days after the date of the order granting a new trial, if the defendant is incarcerated on that case. If the defendant has been released on bail, trial shall commence within 365 days of the trial court's order."

circumstances occasioning a postponement are beyond its control.

***Commonwealth v. Dixon***, 907 A.2d 468, 474 (Pa. 2006). Thus, if the Commonwealth exercised due diligence during the challenged time periods, the 365–day time limit would be extended. Due diligence, in turn, "is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." ***Ramos***, ***supra*** at 1102. Finally, mindful of the Rule's dual purposes, where "there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime." ***Id***. at 1100.

Appellant argues that the entire time period during which the Commonwealth appealed the grant of suppression should be counted against the Commonwealth. The trial court's Rule 1925(a) opinion refers to the conclusions set forth on-the-record, where the court stated the following:

> THE COURT: Let me address the Rule 600 issue first. In the absence of any appellate decision in Pennsylvania or the absence of any statutory provision or rule, rule which would enable me to reach the conclusion the defense wants me to is that the appellate review days, let's refer to them as, are against the Commonwealth, against or the proper measure by which to calculate the speedy trial rule in a retrial scenario would include the days that went before the first trial.
>
> I agree with the calculation of time stated in the Commonwealth's response to the Rule 600 Motion. I suppose

- 8 -

we could quibble over a couple of days here and a couple of days there. I don't intend to do that.

If I need to reconstruct it precisely, I will do it in the context of a 1925 opinion, but I'm taking it at face value, Ms. Capuano's representation to the Court.

If you exclude the appellate consideration period, and don't count the days that got us to the commencement of trial, that 195 days by her calculations are charged to the Commonwealth. That doesn't get us anywhere close to the infraction of the 365 day timeframe . . . and therefore, defendant's motion to dismiss the charges pursuant to Rules of Criminal Procedure 600 is denied.

N.T., 5/11/15, at 76-77.

The dispositive issue in this case is whether the 518 days during which the Commonwealth appealed the suppression order is chargeable to the Commonwealth. "[I]t is clear that if the delay occasioned by the Commonwealth's appeal to the Superior Court and then to the Supreme Court is counted against the Commonwealth, then [A]ppellant's speedy trial rights have been violated."[6] Appellant's brief at 32-33. Appellant challenges the trial court's calculation by claiming that the Commonwealth failed to exercise due diligence when it filed the appeal. "Appellant respectfully asserts that the Commonwealth's decision to appeal the trial court's

_____

[6] This calculation is correct. A total of 812 days elapsed between the date granting mistrial, February 13, 2013, and the date Appellant presented his motion to dismiss, May 6, 2015. If the 518 days are not included in the adjusted run date, then the remaining 294 days (812 minus 518) would extend the adjusted run date only to December 4, 2014. Thus, the 518 day period controls the outcome.

suppression order, despite the lack of any legal support for its position, precludes a finding that the Commonwealth exercised due diligence." ***Id***. at 35-36.

We disagree. The leading case on this matter, ***Commonwealth v. Matis***, 710 A.2d 12 (Pa. 1998), holds that the Commonwealth acts with due diligence for purposes of Rule 600 when it certifies for appeal that a pre-trial order terminates or substantially handicaps the prosecution. In ***Matis***, the trial court had denied a Commonwealth request for a continuance to secure the presence of a witness. ***Id***. at 15. The Commonwealth appealed, but failed to seek permission from the trial court to appeal an interlocutory order pursuant to Pa.R.A.P. 312; instead, the Commonwealth certified that the court's order substantially handicapped its prosecution under Pa.R.A.P. 311(d). This appeal was ultimately quashed. ***Id***.

Following quashal, Matis sought discharge under Rule 600, arguing that the appeal time period was chargeable to the Commonwealth since the Commonwealth (1) failed to exercise due diligence and (2) filed a frivolous appeal in bad faith from a non-appealable interlocutory order for the sole purpose of delaying trial. ***Id***. The trial court granted the motion. The court found that the Commonwealth did not act in bad faith in filing the appeal. However, the trial court concluded that the Commonwealth was not duly diligent. Our Supreme Court disagreed, finding "that the filing of a . . . certification is sufficient safeguard to prevent the Commonwealth from filing

appeals to delay a trial when a court has denied a motion to continue." *Id*. at 18. The Court compared this situation to ***Commonwealth v. Malinowski***, 671 A.2d 674 (Pa. 1996), wherein the Commonwealth did not file a certification and instead opted to withdraw its appeal before the deadline for filing a brief.

Appellant seeks to circumvent ***Matis*** by claiming that our prior panel memorandum affirming the trial court's grant of suppression admonished the Commonwealth for filing an appeal of the suppression order. In a footnote, we stated:

> Enagbare also challenges the Commonwealth's good faith certification that the suppression order will terminate or substantially handicap its prosecution. ***See*** Pa.R.A.P. 311. Enagbare asserts that the prosecution has two alternate, valid sources of evidence that are substantively identical to the evidence at issue. The question of whether the evidence is sufficient for the Commonwealth to meet its burden of proof is not before us at this time and we will not address it. We remind the Commonwealth that such certifications are to be made in good faith and caution that the filing of a certification no longer requires blind acceptance and this Court is permitted to examine the basis of such certifications. ***See Commonwealth v. Cosnek***, 836 A.2d 871 (Pa.2003); ***see also Commonwealth v. White***, 910 A.2d 648 (Pa.2006).

***Enagbare***, ***supra***, unpublished memorandum at n.2. Appellant contends that this footnote, in conjunction with our affirming the trial court, proves that the Commonwealth was not duly diligent. However, as the trial court correctly recognized, we addressed the merits of the appeal and therefore this statement was *dicta*.

Moreover, the cases cited in this *dictum* do not affirmatively state that we may question the basis for the certification when reviewing an appeal of a suppressed inculpatory statement. Following our memorandum decision, this Court issued **Commonwealth v. Woodard**, 136 A.3d 1003 (Pa.Super. 2016), in which we quashed a Commonwealth appeal from a denial of motion for joinder. In reaching this conclusion, we discussed our jurisdiction to review Commonwealth appeals:

> Although Rule 311(d) permits an appeal as of right, prior case law has continually placed limits on the scope of this right as it pertains to non-evidentiary issues. Thus, **the court will not "accept blindly the Commonwealth's certification of substantial hardship" when appeal is sought for non-evidentiary interlocutory orders. *White I, supra*** at 558. As illustrated by the **White** cases, the law regarding Commonwealth appeals under Rule 311(d) is far from settled.

*Id*. at 1005 (emphasis added). In other words, our ability to examine the Commonwealth's certification has, to date, extended only to Commonwealth appeals pertaining to non-evidentiary rulings. The order suppressing Appellant's confession was, of course, an evidentiary ruling.

Additionally, the Commonwealth's motivation in pursuing an appeal poses a factual question, as opposed to a question of law implicating our jurisdiction to consider a Commonwealth appeal. **Matis**, **supra** at 15 ("This Court is therefore bound by the trial court's **factual finding** that the Commonwealth did not act in bad faith.") (emphasis added). Hence, **Matis** applies, and the Commonwealth exercised due diligence. Since the trial court did not find the Commonwealth acted in bad faith in pursuing its

appeal, the 518 days constituted excusable time that is added to the mechanical run date. This yields an adjusted run date of July 16, 2015. Therefore, trial commenced within the permitted time period.

We next address Appellant's double jeopardy claim, which was litigated prior to the motion to suppress and accompanying Commonwealth appeal. Appellant alleged that the Commonwealth's failure to provide the **Brady** material was prosecutorial misconduct. The trial court held a hearing and issued an order denying relief on March 26, 2013, which included findings of fact.[7]

An appeal grounded in double jeopardy raises a question of constitutional law, and our scope of review is plenary and the standard of review *de novo*. **Commonwealth v. Kearns**, 70 A.3d 881 (Pa.Super. 2013), sets forth the applicable principles:

> "The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense." **Oregon v. Kennedy**, 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). However, the "Double Jeopardy Clause is no bar to retrial" when "the defendant moves for a mistrial[.]" *Id.* at at 673, 102 S.Ct. 2083 (1982). The Supreme Court of the United States has recognized a limited exception to this rule, holding that:

---

[7] The trial court did not determine whether the motion to dismiss was frivolous. **See** Pa.R.Crim.P. 587(B)(4) (if motion to dismiss on double jeopardy grounds is denied, the findings of fact shall include a finding as to frivolousness). The Commonwealth does not suggest that the issue is waived or otherwise non-appealable at this juncture; thus, we shall address the merits.

> [T]he circumstances under which ... a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.
>
> *Id.* at 679, 102 S.Ct. 2083.
>
> Our Supreme Court has determined that the Double Jeopardy Clause of Pennsylvania's constitution provides greater protection than its federal counterpart:
>
>> [T]he double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.
>
> *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321, 325 (1992).

*Id*. at 884. To the extent factual findings bear on the double jeopardy question, we apply the more deferential standard of review to the trial court's findings. *Id*.

Preliminarily, we note that Appellant's double jeopardy claim rested solely on the *Brady* violation. Indeed, Appellant's Pa.R.A.P. 1925(b) statement was similarly limited: "Did the lower court err in denying appellant's motion to bar retrial of his case where his first trial ended in a mistrial as a result of the Commonwealth's withholding of exculpatory evidence?" Rule 1925(b) Statement, 3/24/16, at 1.

Appellant now seeks to raise additional matters not presented to the trial court, claiming that "the Commonwealth engaged in a pattern of misconduct designed to deprive him of a fair trial." Appellant's brief at 17. Specifically, Appellant folds in the Rule 600 argument, *supra*, and claims that the Commonwealth's appeal was purely dilatory. Appellant also cites to the testimony of Detective Billie, who was called by Appellant during trial. He testified that the District Attorney's office ordered the rape kit destroyed and did not perform any DNA analysis of the kit. N.T. Vol. III, 5/13/15, at 199.[8]

However, Appellant did not raise these matters to the trial court nor did he include them in the Pa.R.A.P. 1925 statement. We therefore agree with the Commonwealth that these additional theories have been waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). We therefore confine our analysis to the actual claim raised and addressed by the trial court.[9]

Thus limited, we find that the trial court correctly denied this claim. As applied to **Brady** violations, intentionality is a necessary prerequisite for

---

[8] The Commonwealth argued during closing arguments that the kit was not tested because Appellant's intercepted recording admitted that he used a condom. N.T. Vol. IV, 5/14/15, at 65.

[9] Appellant cites **Commonwealth v. Anderson**, 38 A.3d 828 (Pa.Super. 2011), in support of his position. **Anderson** holds that a defendant seeking to bar retrial on prosecutorial misconduct grounds is not limited to relying on conduct that occurred before or during the first trial. However, this does not mean that Appellant is relieved of his obligation to present the issue to the trial court.

double jeopardy relief. In **Kearns**, **supra**, we reversed a trial court's order barring retrial following a **Brady** violation that resulted in a mistrial. The trial court opined that the prosecutor's failure to disclose exculpatory material was grossly negligent, but not intentional. **Id**. at 886. We held that finding mandated reversal:

> In this instance, we accept the factual determinations of the trial court regarding the Commonwealth's conduct and, further, we accept its legal conclusion that the Commonwealth was grossly negligent in withholding discoverable evidence from the defense based upon those factual determinations. Nevertheless, gross negligence on the part of the Commonwealth is never a sufficient basis upon which to bar retrial **on double jeopardy grounds**.

**Id**. (emphasis in original).

Herein, the trial court's order denying the motion to bar retrial specifically found that the **Brady** violation was unintentional. As an initial matter, we note the nature of the **Brady** violation during the first trial. Following the close of the Commonwealth's case-in-chief, the prosecutor informed the court that several supplemental pages of reports prepared by Detective Billie were not turned over to Appellant. N.T., 2/13/15, at 127. Appellant's brief states that these missing reports contained a supplemental interview Detective Billie conducted with the victim, an interview with the victim's boyfriend, and a synopsis of an interview with another person who was at the bar the evening of the incident. Appellant's brief at 17. The Commonwealth's brief agrees with this description. Commonwealth's brief

at 8. The trial court took testimony on the motion to bar retrial, and issued the following findings of fact:

> Initially, we observe that there is no indication that any representative of the Chester County District Attorney's Office who at any time has had responsibility for handling this case, from Mr. Carmody through Mr. O'Keefe, has ever demonstrated any personal act of misconduct. Rather, the issue here is solely with police department actions.
>
> In this case, Detective Billie testified that he believed the entire report was turned over to the Commonwealth. The court finds his testimony credible, and therefore concludes that the failure to turn over the missing pages was inadvertent, and not willful or intentional.

Order, 5/26/13, at n.1, 3-4. This credibility finding binds us. Thus, as a matter of law, the trial court correctly denied the motion. **Kearns**.

Appellant's third issue challenges the admission of Appellant's statements introduced through the audiotaped recordings of his conversations with the victim as violating the *corpus delicti* rule. That rule is "rooted in the hesitancy to convict a person of a crime solely on the basis of that person's statements." **Commonwealth v. Turza**, 16 A.2d 401, 404 (1940). Therefore:

> Before introducing an extra-judicial admission, the Commonwealth must establish by independent evidence that a crime has in fact been committed; however, the Commonwealth is not required to prove the existence of a crime beyond a reasonable doubt.

**Commonwealth v. Reyes**, 681 A.2d 724, 727 (Pa. 1996).

Application of the *corpus delicti* rule may occur at two levels. The first level is a matter governing evidentiary admissibility, applying a prima facie

- 17 -

standard, which is subject to an abuse of discretion. ***Commonwealth v.
Otterson***, 947 A.2d 1239, 1249 (Pa.Super. 2008). The second tier requires
proof beyond a reasonable doubt, such that the factfinder may consider the
statements in deciding guilt.

> After the court has made its initial determination that the
> Commonwealth has proved the *corpus delicti* by a
> preponderance of the evidence and has ruled the confession to
> be admissible, the *corpus delicti* rule **additionally** requires that
> the Commonwealth prove to the **jury's satisfaction beyond a
> reasonable doubt**, the c*orpus delicti* of the crimes charged.

***Reyes***, ***supra*** at 728 (quoting ***Commonwealth v. Ahlborn***, 657 A.2d 518
(Pa.Super. 1995)) (emphases supplied by ***Ahlborn***). "The crucial
determination in applying the *corpus delicti* rule is whether, at the close of
the case, the proof of the *corpus delicti* was sufficient to permit the fact
finder to consider defendant's admission or confession." ***Commonwealth
v. Cuevas***, 61 A.3d 292, 295 (Pa.Super. 2013) (quoting ***Commonwealth v.
Hogans***, 584 A.2d 347, 349 (Pa.Super. 1990)).

The trial court found that this issue has been waived, and, in the
alternative, is meritless. We agree on both counts. Appellant failed to raise
a *corpus delicti* issue at trial. Appellant's Rule 1925(b) statement asked the
trial court to find the issue preserved "because he reasonably believed the
Commonwealth would introduce evidence obtained from the complainant's
rape kit[.]" Rule 1925(b) Statement, 3/24/16, at 1, n.1. However,
Appellant does not explain why that belief excuses his failure to object, nor

does it explain why Appellant did not object to the jury's ability to consider the statements in deliberations.

Nevertheless, we have reviewed Appellant's argument and find that Appellant is not entitled to relief. There is no *corpus delicti* issue if the evidence, excluding the confession, establishes that the crime was committed. In **Reyes**, **supra**, the trial court incorrectly applied the second tier of the *corpus delicti* rule by considering the statements themselves in conducting the beyond a reasonable doubt inquiry. The Court proceeded to review the sufficiency of the evidence without regard to the statements:

> As such, we agree with Appellant that although the trial court employed the proper standard for admitting his extra-judicial statements, the trial court failed to utilize the correct standard regarding its consideration of the statement. However, even excluding the alleged erroneously admitted inculpatory statements of Appellant, and the Coroner's report as well, the circumstantial evidence alone was sufficient to convict Appellant of murder.
> . . . .
>
> Based upon the aforementioned facts, we are satisfied that there was sufficient evidence to support the trial court's conclusion that the Commonwealth proved Appellant's guilt beyond a reasonable doubt even excluding Appellant's extra-judicial statements.

*Id*. at 730. Herein, the victim testified that she was asleep as a result of intoxication, woke up and saw Appellant on top of her, felt his penis inside her, attempted to push him off, and did not consent to sexual intercourse at any point. This testimony easily satisfies the elements of the two charged rape crimes. **Commonwealth v. Gonzalez**, 109 A.3d 711, 720 (Pa.Super.

2015) ("The Crimes Code defines rape in pertinent part as follows: "A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant . . . by forcible compulsion."); **Commonwealth v. Price**, 616 A.2d 681, 683 (Pa.Super. 1992) (a victim who is sleeping when sexual intercourse is initiated is considered unconscious for rape of an unconscious person charge). As the trial court noted in addressing the merits of this claim, the victim's testimony standing alone is sufficient to convict. "A rape victim's uncorroborated testimony to penal penetration is sufficient to establish sexual intercourse and thus support a rape conviction." **Commonwealth v. Wall**, 953 A.2d 581, 583 (Pa.Super. 2008). Thus, the *corpus delicti* issue is meritless.

Finally, Appellant raises a challenge to the weight of the evidence. Appellant properly preserved this issue in a post-sentence motion and the trial court addressed the claim. **Commonwealth v. Stiles**, 143 A.3d 968, 980 (Pa.Super. 2016) ("[A] defendant must present his challenge to the weight of the evidence to the trial court for a review in the first instance."). The trial court found that the weight of the evidence supported the jury's verdict, setting forth its reasoning as follows:

> [T]he specific points of evidence raised to support [the weight] claim are attacks upon the credibility of the victim. The credibility of witnesses is an element of the weight of the evidence, exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. Therefore, we will examine Defendant's claim through the lens of the weight of the evidence. A verdict is against the weight of the evidence only when that verdict is so

- 20 -

contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. When considering a weight of the evidence claim, the role of the trial court is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice. A court reviewing the evidence cannot substitute its judgment for that of the jury on issues of credibility.

In the instant case, Defendant's conviction is not so contrary to the evidence as to shock one's sense of justice. . . . Even though there were inconsistencies in the victim's statements over the course of the investigation, the jury chose to find her trial testimony credible. The jury, as the factfinder, was entitled to believe some, all, or none of the various statements made by the victim, and chose to accept her testimony that she was raped by Defendant and render a guilty verdict. Moreover, the jury heard an audio recording wherein Defendant admitted his culpability in a telephone call with the victim recorded by police. The jury's verdict was not against the weight of the evidence presented by the Commonwealth, therefore Defendant's motion must be denied.

Order Denying Post-Sentence Motions, 2/23/16, at 1-2 (quotation marks and citations omitted). The foregoing discussion cogently sets forth the applicable law and the rationale for denying the claim. In reviewing this conclusion, we do not review the underlying weight of the evidence claim; instead, we review the judge's exercise of discretion in ruling on the claim. "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Smith*, 146 A.3d 257, 264–265 (Pa. Super. 2016) (citation omitted). We discern no such abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/8/2017