J-A32032-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ANDREW THOMAS TUBBS, | : | |
| | : | |
| Appellant | : | No. 871 MDA 2017 |

Appeal from the Judgment of Sentence January 12, 2017
in the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000829-2016

BEFORE:   OTT, DUBOW, and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:      **FILED FEBRUARY 20, 2018**

Andrew Thomas Tubbs (Appellant) appeals from the January 12, 2017 judgment of sentence of an aggregate term of one to four years of incarceration after a jury found him guilty of one count each of receiving stolen property, theft by deception, and theft by unlawful taking.  Upon review, we affirm.

The testimony at trial established the following.  On April 21, 2016, Rachel Warburton's boyfriend, Nick Aloisio, picked her up from work, and the two went to Pudgie's Pizza in Lycoming County for the purpose of meeting Appellant to purchase marijuana from him. When they arrived at Pudgie's, Appellant and his friend, Jordan Probst, got into the car.  Aloisio gave Appellant

---

*Retired Senior Judge assigned to the Superior Court.

$4,000[1] to purchase 24 ounces of marijuana. Appellant and Probst left the car, indicating "they would be right back." N.T., 10/27/2016, at 28. Appellant never returned to the car with the marijuana. Warburton testified that Aloisio later received a text message from Appellant, saying "Sorry, bro; you might as well just go home. I'm going to Florida." *Id*. at 30. The attempts of Warburton and Aloisio to find Appellant were unsuccessful, and later that day Warburton called police to report the stolen money.[2]

Probst testified that on April 21, 2016, he received a call from Appellant asking Probst and his girlfriend to pick up Appellant so Appellant could meet with Aloisio. Probst testified that when they arrived at Pudgie's, he and Appellant got into Aloisio's car; there was talk of buying drugs; and Aloisio gave Appellant four separate stacks of money. Probst testified that he and Appellant then went to Sunoco where Probst purchased heroin and Appellant gave his "baby's mom" a "nice little chunk of money." *Id*. at 41. The two then went to Foot Locker at the mall and "purchased a whole bunch of stuff." *Id*.

_____

[1] This money was divided into four bundles of $1,000 each wrapped separately with rubber bands.

[2] Initially, Warburton told police that Appellant stole $4,000 from Aloisio's car, which was money that Aloisio had saved to buy a new motorcycle. She later changed her story.

In addition, Probst testified that Appellant and Aloisio spoke on the phone and Appellant told Aloisio that he was "burnt for that money."[3] *Id*. at 50.

Later that evening, Detective Joshua Bell observed a suspicious vehicle, and initiated a traffic stop of the vehicle in which both Probst and Appellant were riding. Upon stopping the vehicle, Detective Bell noticed "the odor of marijuana emanating from within the car." *Id*. at 96. Upon searching Appellant, Detective Bell recovered "what appeared to be a large amount of U.S. currency rolled up and rubber banded." *Id*. at 97. Detective Bell's partner, Detective Bathgate, learned that these individuals may have been recently "involved in anther crime" and it was requested that they "detain everybody." *Id*. Lycoming police arrived at the scene and took possession of the cash, which amounted to $2,000. Recovered from the trunk of the car were items purchased from Foot Locker, along with receipts for those items.

Lycoming police officer, Matthew McCormick, interviewed Appellant the following day. Appellant was read his *Miranda*[4] warnings, and explained to Officer McCormick that he met with Aloisio at Pudgie's where Aloisio provided Appellant with $4,000 so that Appellant "could purchase a pound and a half of marijuana for [] Aloisio." *Id*. at 60. Appellant then told Officer McCormick that he went to an apartment building near Pudgie's where he met a "white

---

[3] According to Probst, that meant that Aloisio was "getting taken, and … not getting [the money] back." *Id*. at 51.

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 3 -

male" who "took the money from him" and then informed Appellant that he would not be "getting the drugs." *Id*. at 62. In other words, Appellant told police that this white male whom he could not identify stole the $4,000.

Three days later, on April 25, 2016, Officer Chris Kriner interviewed Appellant. Once again, Appellant waived his *Miranda* rights. Appellant told Officer Kriner "that he had been in communication with [] Aloisio and that [] Aloisio wanted him to get a pound and a half of marijuana for him. … [H]e met up with [] Aloisio and took money from him, $4,000[] in cash." N.T., 10/27/2016, at 69. Appellant then told Officer Kriner that he went to the Chatham Park apartments, gave Aloisio's $4,000 to a white male "in the hopes of getting marijuana, and that that male had burned him, meaning he took his money and didn't give him any drugs." *Id*.

Based on the foregoing, Appellant was charged with theft by unlawful taking, conspiracy to commit theft by unlawful taking, and receiving stolen property. A jury trial was held on October 27, 2016. Immediately prior to trial, the Commonwealth made an oral motion to amend the criminal information to add the charge of theft by deception. Appellant objected, and the trial court permitted the amendment. Appellant was found guilty of theft by unlawful taking, receiving stolen property, and theft by deception.

On January 12, 2017, Appellant was sentenced to an aggregate term of one to four years of incarceration. Appellant timely filed a post-sentence

motion, which was denied. Appellant timely filed a notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents numerous questions for our review. We begin with Appellant's challenges to the sufficiency of the evidence to sustain all three convictions, as well as his claims that the verdict was contrary to the weight of the evidence for all three convictions.[5]

> In order to address [these claims] we find it necessary to delineate the distinctions between a claim challenging the sufficiency of the evidence and a claim that challenges the weight of the evidence. The distinction between these two challenges is critical. A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, *Tibbs v. Florida*, 457 U.S. 31 [] (1982)[], whereas a claim challenging the weight of the evidence if granted would permit a second trial. *Id*.

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is

---

[5] These arguments consist of six separate issues in Appellant's brief.

against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (some citations and internal quotation marks omitted).

With respect to the six issues Appellant presents challenging the weight and sufficiency of the evidence, he sets forth essentially the same argument:

In the instant matter, the Commonwealth attempted to show injury or loss through the testimony of [] Warburton. However, [] *Warburton testified that she did not entrust Appellant with any money, but that [] Aloisio did*. [] Aloisio, who[m] Appellant avers is the alleged victim, did not testify at trial. Without [] Aloisio's testimony, the Commonwealth did not have any evidence indicating that Appellant failed to provide [] Aloisio with goods or services, thus completing the sale of [m]arijuana.

Appellant's Brief at 22 (emphasis in original; citations to notes of testimony omitted) (challenging the sufficiency of the evidence to sustain conviction for theft by unlawful taking);[6] *id*. at 23 (challenging the sufficiency of the

_____

[6] Theft by unlawful taking is defined as follows: "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a).

evidence to sustain conviction for receiving stolen property);[7] *id*. at 24 (challenging the sufficiency of the evidence to sustain conviction for theft by deception);[8] *id*. at 25 (arguing conviction for theft by unlawful taking was contrary to the weight of the evidence); *id*. at 26 (arguing conviction for receiving stolen property was contrary to the weight of the evidence); *id*. at 26-27 (arguing conviction for theft by deception was contrary to the weight of the evidence).

The trial court responded to Appellant's arguments as follows.

> While there may have been no direct testimony from []
> Aloisio[, the fact that he] did not subsequently receive any goods
> or services was made abundantly clear from the evidence which
> *was* presented. For example, Jordan Probst's testimony that he
> and [Appellant] immediately left with the money and did not
> purchase any marijuana, his testimony that [Appellant] told
> Aloisio that he was going to Florida with the money, his testimony
> that [Appellant] and his compatriots went shopping with the
> money, his testimony that [Appellant] gave a "nice little chunk of
> money" to his "baby's mom," and the evidence that [Appellant]
> had $2,000 in cash (held together with a rubber band) in his

_____

[7] Receiving stolen property is defined as follows: "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S. § 3925(a).  In addition, "theft by receiving stolen property is a lesser-included offense of theft by unlawful taking." ***Commonwealth v. Young***, 35 A.3d 54, 63 (Pa. Super. 2011).

[8] Theft by deception is defined as follows: "A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally … creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise." 18 Pa.C.S. § 3922(a)(1).

backpack when stopped by police. This evidence was more than sufficient to enable the fact-finder to find beyond a reasonable doubt that [Appellant] took the money and did not provide the marijuana, with the requisite intent to deprive Aloisio and Warburton of the money.

* * *

[Appellant] contends that because [] Aloisio did not testify, there was no "direct" evidence that he did not receive goods or services and thus, apparently, that [Appellant] acted with the requisite larcenous intent when he took the money. Again, even though the evidence did not come directly from Aloisio, the verdict was hardly a product of speculation or conjecture. All the evidence pointed to [Appellant's] guilt and the jury so found. The court's sense of justice was not at all shocked.

Trial Court Opinion, 3/23/2017, at 10-11 (emphasis in original).

First, to the extent Appellant is arguing that the Commonwealth did not present the testimony of a victim, he is incorrect. Warburton testified that half of the money stolen was her money. **See** N.T., 10/27/2016, at 34. Moreover, Warburton testified that she was in the car when Aloisio handed their money to Appellant. She also testified that earlier in the day, she heard Aloisio tell Appellant "that he wanted him to get a pound and a half of weed for him." **Id**. at 35. Warburton testified Aloisio received a text message from Appellant indicating that he would not be delivering the marijuana. **Id**. at 30. This testimony, if believed by the jury, is sufficient to establish the elements of the crimes for which Appellant was convicted. **See Commonwealth v. Steele**, 559 A.2d 904, 909 (Pa. 1989) (stating "circumstantial evidence is sufficient to sustain a conviction so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt").

Accordingly, we agree with the trial court that the evidence was sufficient to sustain these convictions. Moreover, we discern no abuse of discretion in the trial court's conclusion that the verdict did not shock its sense of justice. Appellant's convictions were based largely upon consistent testimony of Warburton and Probst, which was corroborated by physical evidence. "The fact-finder bears the responsibility to resolve questions of credibility, and, absent extraordinary circumstances, an appellate court will not substitute its judgment for that of the factfinder." **Commonwealth v. Blackham**, 909 A.2d 315, 319 (Pa. Super. 2006) (internal quotation marks omitted). Based on the foregoing, Appellant is not entitled to relief on his claims challenging either the sufficiency or the weight of the evidence.

We now turn to Appellant's argument that the trial court erred in granting the Commonwealth's motion to amend its information immediately prior to trial. Specifically, Appellant argues that the trial court should not have permitted the Commonwealth to amend the information to add a charge for theft by deception because the new charge "included a new element of deception" and "he could not properly prepare for the new allegations." Appellant's Brief at 17. Thus, Appellant argues that the trial court should have permitted Appellant to continue the case.

This issue is governed by Pa.R.Crim.P. 564, which provided as follows at the time of Appellant's trial:[9]

> The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

> Pa.R.Crim.P. 564. When the trial court exercises its discretionary power to allow amendment of the information, the defendant can obtain relief if the amendment prejudices him. ***See Commonwealth v. Mentzer***, 18 A.3d 1200, 1203 (Pa. Super. 2011) (citation omitted). Factors for a court to consider in determining the existence of prejudice include:

> > (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

> ***Id***. (citation omitted).

***Commonwealth v. Williams***, 166 A.3d 460, 463–64 (Pa. Super. 2017).

In addition, because this amendment involved theft-related crimes, 18 Pa.C.S. § 3902 provides additional guidance.

---

[9] A new version of Pa.R.Crim.P. 564 took effect on January 1, 2018.

Section 3902 of the Crimes Code consolidates the various theft offenses defined in Chapter [3]9 into a unitary theft offense. Section 3902 provides:

Conduct denominated theft in this chapter constitutes a single offense. An accusation of theft may be supported by evidence that it was committed in any manner that would be theft under the chapter notwithstanding the specification of a different manner in the complaint or indictment, subject only to the power of the court to ensure fair trial by granting a continuance or other appropriate relief where the conduct of the defense would be prejudiced by lack of notice or surprise.

18 Pa.C.S.[] § 3902. The purpose of § 3902 is to reduce the opportunity for technical defenses based upon legal distinctions between thefts of various kinds. Thus, an accusation of theft may be supported by evidence that it was committed in any manner that would be theft under the Crimes Code, notwithstanding the specification of a different manner in the complaint or indictment. This is true as long as defendant has an opportunity to respond, and is not prejudiced by lack of notice or surprise.

*Commonwealth v. Matty*, 619 A.2d 1381, 1387 (Pa. Super. 1993) (citations omitted).

Despite the last minute notice of the amendment,[10] the trial court concluded that the elements to prove theft by unlawful taking and theft by deception are substantially the same. Moreover, when asked, Appellant could not point to any differences in the defense he would have presented at trial. Accordingly, the trial court granted the motion.

_____

[10] There is no question that Appellant was surprised by this amendment occurring minutes prior to trial. When the trial court asked the Commonwealth why the amendment was so late, the district attorney responded, "Because it occurred to me when it occurred to me." N.T., 10/27/2016, at 6.

On appeal, Appellant still does not point to any witnesses he would have called, differences in defense strategy, or other questions he would have asked based on this charge had he had more time to prepare for trial. The elements of theft by unlawful taking and theft by deception are substantially similar and the charges stemmed from the same incident. Thus, Appellant has not convinced us he was prejudiced by this amendment. Accordingly, we conclude the trial court did not err or abuse its discretion in permitting the Commonwealth to amend the information immediately prior to trial.

Appellant's next argument concerns the admission of statements made by Appellant to police. Specifically, Appellant argues that the trial court erred in admitting these statements in violation of the *corpus delicti* rule. Appellant's Brief at 18-20.

At trial, after the testimony of Warburton and Probst, the Commonwealth called Officer McCormick to testify. Prior to this testimony, Appellant argued that the statements Appellant made to Officer McCormick were inadmissible because Aloisio, not Warburton, "handed [Appellant] the money and [] told [Appellant] what the money was intended for." N.T., 10/27/2016, at 55. The trial court denied that motion, concluding that 1) Warburton was also a victim, and 2) that "a person who witnesses someone being victimized can testify to said victimization." *Id*. at 56.

> The *corpus delicti* rule begins with the proposition that a criminal conviction may not be based upon the extra-judicial confession of the accused unless it is corroborated by independent evidence establishing the *corpus delicti*. The *corpus delicti*,

literally "the body of the crime," is defined as a wrong committed by criminal means, and consists of the occurrence of a loss or injury, and some person's criminal conduct as the source of that loss or injury. The criminal responsibility of a particular, identifiable person, e.g. the accused, is not a requirement of the rule. The purpose of the rule is to prevent the use of hasty and unguarded confessions to convict an individual when no crime has been committed.

Under Pennsylvania law, the application of the *corpus delicti* rule occurs in two distinct phases. The first phase involves the court's application of a rule of evidence governing the threshold question of the admissibility of the confession. In this first phase of the rule's application, the court must determine whether the Commonwealth has proven the *corpus delicti* of the crimes charged by a mere preponderance of the evidence. If the court is satisfied that, on the evidence presented, it is more likely than not that a wrong has occurred through criminal agency, then the confession and/or admissions of the defendant are admissible.

The second phase of the rule's application occurs after a confession has already been admitted into evidence. After the court has made its initial determination that the Commonwealth has proved the *corpus delicti* by a preponderance of the evidence and has ruled the confession to be admissible, the *corpus delicti* rule **additionally** requires that the Commonwealth prove to the **jury's satisfaction beyond a reasonable doubt**, the *corpus delicti* of the crimes charged. We note that the dual level of proof the *corpus delicti* rule requires is not without its critics. We additionally note that other jurisdictions do not require a two-tiered, dual level of proof application of the rule.

Nevertheless, the law of Pennsylvania continues to require that the Commonwealth prove the existence of the *corpus delicti* beyond a reasonable doubt before the jury may consider the defendant's confession. A jury instruction to that effect is, therefore, crucial, since the confession may be admitted into evidence upon a presentation of the *corpus delicti* by a mere preponderance.

***Commonwealth v. Ahlborn***, 657 A.2d 518, 520-21 (Pa. Super. 1995)

(internal citations omitted) (emphasis in original).

Here, Appellant argues Warburton's testimony did not establish an "injury or loss." Appellant's Brief at 19. Appellant once again argues that because Aloisio is the victim, and he did not testify at trial, "the Commonwealth did not have any evidence." *Id*.

With respect to the first requirement of the *corpus delicti* rule, we observe that the *corpus delicti* may be established by circumstantial evidence. **Commonwealth v. Reyes**, 681 A.2d 724, 727 (Pa. 1996). In this case, prior to Officer McCormick's testimony, Warburton testified that Aloisio gave Appellant money that belonged to her and Aloisio, and Appellant neither delivered the marijuana nor returned the money. Based on the foregoing, we agree with the trial court's conclusion that this testimony established an injury or loss, consistent with a crime, beyond a preponderance of the evidence.

With respect to the second part of the *corpus delecti* rule, that the "Commonwealth prove to the **jury's satisfaction beyond a reasonable doubt**, the *corpus delicti* of the crimes charged," **Ahlborn**, 657 A.2d at 521 (emphasis in original), Appellant has not set forth any argument. Moreover, the jury instructions in this case were not transcribed, *see* N.T., 10/27/2016, at 132, and the verdict slip does not contain a specific question in this regard, *see* Verdict Slip, 10/27/2016. Thus, to the extent Appellant is challenging the second requirement of the *corpus delicti* test, that claim is waived. Based on the foregoing, we conclude that Appellant is not entitled to relief on his *corpus delecti* issue.

Appellant next argues that the trial court erred in admitting certain text messages found on Appellant's phone at the time of his arrest. Appellant's Brief at 20-21. Appellant argues that these were inadmissible based upon lack of authentication and hearsay.

By way of background, during his April 25, 2016 interview with Appellant, Officer Kriner asked Appellant if he had anything that could corroborate his story. Appellant indicated to Officer Kriner that there would be information available on his cell phone, which had been located in the car that Detective Bell had stopped and was now in police custody. Appellant provided his passcode.

Officer Kriner discovered eight text messages between Appellant and Aloisio on that phone. At trial, counsel for Appellant objected to the admission of these messages, arguing that they were inadmissible because 1) the messages were not authenticated, and 2) the messages contained hearsay. The trial court overruled both objections. The text messages corroborated Warburton's version of events, that Aloisio asked Appellant to purchase 24 ounces of marijuana for $4,000; provided Appellant $4,000 for that purpose, and that Aloisio believed that Appellant "took $4,000 from" him. N.T., 10/27/2016, at 85.

Following a review of the certified record and the briefs for the parties, we conclude that pages 5 through 9 of the opinion of the Honorable Dudley N. Anderson thoroughly address these issues and arguments and apply the

- 15 -

correct law to findings of fact that are supported by the record. We discern no abuse of discretion. Therefore, we adopt pages 5 through 9 of the trial court's opinion of March 23, 2017 as our own based upon the reasons stated therein.[11] *See* Trial Court Opinion, 3/23/2017, at 5-9 (explaining, *inter alia*, that the text messages were authenticated properly and that the text messages were either not hearsay or harmless error).

Finally, Appellant sets forth two arguments about his sentence. We consider first Appellant's argument that he should have been sentenced for theft as a first-degree misdemeanor rather than a third-degree felony based upon the amount of money stolen. Appellant's Brief at 27-28.

Although Appellant contends that this issue challenges the discretionary aspects of his sentence, "the proper grading of an offense pertains to the legality of the sentence." *Commonwealth v. Coto*, 932 A.2d 933, 935 (Pa. Super. 2007).

> A challenge to the legality of a sentence … may be entertained as long as the reviewing court has jurisdiction. It is also well-established that [i]f no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. Issues relating to the legality of a sentence are questions of law[.] … Our standard of review over such questions is *de novo* and our scope of review is plenary.

---

[11] The parties shall attach a copy of the trial court's March 23, 2017 opinion to this memorandum in the event of further proceedings.

*Commonwealth v. Cardwell*, 105 A.3d 748, 750 (Pa. Super. 2014) (internal citations and quotation marks omitted).

The grading of theft offenses is governed by 18 Pa.C.S. § 3903, which provides the following in relevant part.

> (a.1) **Felony of the third degree**.--Except as provided in subsection (a) or (a.2), theft constitutes a felony of the third degree if the amount involved exceeds $2,000….
>
> ***
>
> (b) **Other grades.**--Theft not within subsection (a), (a.1) or (a.2), constitutes a misdemeanor of the first degree….

18 Pa.C.S. § 3903.

Here, Appellant contends that the trial court erred in sentencing him under subsection 3903(a.1) where the Commonwealth failed to prove Appellant stole more than $2,000. Specifically, Appellant claims, once again, that because Aloisio did not testify, the Commonwealth did not establish that Appellant stole $4,000. Instantly, the jury found that Appellant stole more than $2,000. *See* Verdict Slip, 10/27/2016. Moreover, we have already concluded that the evidence was sufficient to sustain Appellant's convictions. Therefore, we conclude that Appellant's offenses were graded properly as third-degree felonies, and he is not entitled to relief on this basis.

We now turn to Appellant's other sentencing issue, where he claims that his sentence is excessive because neither Aloisio nor Warburton testified at sentencing to the impact of this crime. Appellant's Brief at 27. This is a

challenge to the discretionary aspects of his sentence, which we consider mindful of the following.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his [or her] sentence must invoke this Court's jurisdiction by satisfying a four-part test:

>> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (some citations omitted).

Here, Appellant filed timely a post-sentence motion and a notice of appeal. Moreover, Appellant has included a statement pursuant to Rule 2119(f) in his brief. Appellant's section 2119(f) statement, in its entirety, provides the following.

> Appellant avers that the trial court abused its discretion when imposing sentence. The Court imposed an aggregate sentence of 1 year to 4 years in a SCI. Appellant avers that this Honorable Court should review the sentencing determination because the Court's sentence is in direct conflict with applicable statutes and caselaw. See 42 Pa.C.S. § 9781, See also Commonwealth v. Downing, 990 A.2d 788, 793 (Pa. Super. Ct. 2010).

Appellant's Brief at 13 (*verbatim*).

In considering whether Appellant has raised a substantial question, we observe the following.

> A substantial question exists where an appellant advances a colorable argument that the trial court's actions were inconsistent with a specific provision of the sentencing code, or contrary to the fundamental norms underlying the sentencing process. In determining whether a substantial question exists, [o]ur inquiry must focus on the reasons for which the appeal is sought in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits. **Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists.**

*Commonwealth v. Provenzano*, 50 A.3d 148, 154 (Pa. Super. 2012) (internal citations and quotation marks omitted) (emphasis added).

Instantly, Appellant's 2119(f) statement does not specify how the trial court erred in fashioning Appellant's sentence. He does not explain how either the statute he cites[12] or the case he references[13] bears any relationship to the sentence Appellant received. Appellant has simply set forth a bald claim of error, stating no specifics as to why Appellant seeks to challenge his sentence. Accordingly, we conclude that Appellant has not raised a substantial question. Therefore, Appellant's discretionary-aspects-of-sentencing claim fails.

Appellant having presented no issue on appeal entitling him to relief, we affirm Appellant's judgment of sentence.

---

[12] Section 9781 of the sentencing code simply explains that an appellate court may review the discretionary aspects of a sentence.

[13] *Commonwealth v. Downing*, 990 A.2d 788, 793 (Pa. Super. 2010) (holding that in fashioning Downing's sentence, "the trial court was permitted to consider all reasonable inferences derived from the evidence presented at trial" in concluding that Downing possessed a gun for criminal purposes).

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/20/2018

IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA    : NO. CR – 829 – 2016

                           :

           vs.               : CRIMINAL DIVISION

                           :

ANDREW TUBBS,            :

         Defendant      : Post-Sentence Motion

## *OPINION AND ORDER*

Before the Court is Defendant's Post-Sentence Motion, filed January 20, 2017. Argument was heard February 16, 2017, following which the court directed the preparation of a transcript of the trial and sentencing hearing. Those transcripts were completed on March 6, 2017.

Following a jury trial on October 27, 2016, Defendant was convicted of one count of theft by unlawful taking, one count of receiving stolen property and one count of theft by deception based on allegations that on April 21, 2016 he was provided with $4000 cash to buy marijuana for someone but kept the money instead. On January 12, 2017 he was sentenced to concurrent terms of one to four years' incarceration on the two theft charges; the receiving charge was determined to merge for sentencing purposes.

In the instant motion, Defendant contends the court erred in (1) granting the Commonwealth's pre-trial motion to amend the information, (2) admitting Defendant's statements to police, and (3) admitting certain text messages, that the evidence was insufficient to support the convictions, that the convictions were against the weight of the evidence, that the grading of the offenses was against the weight of the evidence, and finally, that the sentence was excessive. Each of these issues will be addressed in turn.

## Motion to Amend Information

In the Information, Defendant was charged with theft by unlawful taking and receiving stolen property. Just before trial began, the Commonwealth moved to amend the Information to include a charge of theft by deception. Defendant objected on the basis that the charge contained an element not contained in the charge of theft by unlawful taking, i.e. the element of deception.

Theft by unlawful taking is defined as "unlawfully tak[ing], or exercise[ing] unlawful control over, moveable property of another with intent to deprive him thereof". 18 Pa.C.S. Section 3921. The Comment explains that "unlawfully" means that "the necessary *mens rea* must be present in order to constitute theft". Id. Theft by deception is defined as "intentionally obtain[ing] or withhold[ing] property of another by deception" and deception is defined as "create[ing] or reinforce[ing] a false impression, including false impressions as to law, value, intention or other state of mind". 18 Pa.C.S. Section 3922.

In the instant case, the victims alleged that they gave Defendant $4000 cash based on Defendant's statements that he would use the money to purchase for them a pound and a half of marijuana, in accordance with their previous request that he do so, but that he kept the money and did not provide them with the marijuana. To prove the "necessary *mens rea*" to show theft by unlawful taking in these circumstances, the Commonwealth would have to show that Defendant took the money "with intent to deprive [the victims] thereof", that is, with the intent to keep it and not return anything of value for it. To prove "deception" to show theft by deception, the Commonwealth would have to show that Defendant took the money by creating a false impression as to his intention, that is, that he took it intending not to buy marijuana but to keep it. These two elements are so

2

similar that the court saw no prejudice to Defendant; although defense counsel stated that he would need to prepare differently to meet the charge of "deception", the court cannot conceive of how the defense could have been any different, and counsel did not elaborate on that point, either at trial or at argument on the motion.[1]

Section 3902 of the Crimes Code allows for prosecution of one theft offense even though a different theft offense has been charged in the information, in the absence of prejudice to the defendant. Commonwealth v. Matty, 619 A.2d 1383 (Pa. Super. 1993)(an accusation of theft may be supported by evidence that it was committed in any manner that would be theft under the Crimes Code, notwithstanding the specification of a different manner in the complaint or indictment, ... as long as defendant has an opportunity to respond, and is not prejudiced by lack of notice or surprise.) Having found no prejudice to Defendant, the court allowed the amendment.

### Admission of Defendant's Statements to Police

At trial, the Commonwealth first introduced the testimony of one of the two alleged victims, Rachel Warburton. Ms. Warburton testified that on April 21, 2016 at about 2:30 p.m. she and a friend, Nick Aloisio, went to "meet Andy to buy weed",[2] that they met with Defendant and his friend, Jordan Probst, in Nick's car at a pizza place on Lycoming Creek Road,[3] that Nick handed Defendant

---

[1] Defendant's actual defense, introduced through statements he made to police following his arrest, was that he attempted to purchase the marijuana but the person from whom he attempted the purchase actually took the money from him and did not provide him with any marijuana. If believed, these facts would serve to negate findings of either of the mental states required to constitute either type of theft.

[2] N.T., October 27, 2016 at. Page 26.

[3] Id. at page 27.

3

$4,000 (four "wads" of $1,000 each),[4] that Nick told Defendant he wanted him to go get a pound and a half of weed for it and that Defendant said "I can get you it",[5] that Defendant and Jordan got out of the car and walked off to behind the pizza place, saying they would be right back but that they did not come back[6], that they tried to find Defendant but couldn't,[7] and that Nick later received a text message from Defendant which stated "sorry, bro, you might as well just go home. I'm going to Florida."[8] Ms. Warburton also testified that about half of the money was hers.[9]

Next, Jordan Probst testified that on April 21, 2016 he and his girlfriend went to pick up Defendant at his request, that upon picking him up he stated that he wanted to go to Lycoming Creek Road to meet Nick Aloisio, that they did so and that he and Defendant got into Nick's car and talked about getting marijuana for Nick, that Nick handed Defendant money and then they got out of the car and went back to his (Jordan's) girlfriend's car and then left and went back to his (Jordan's) house.[10] Jordan Probst also testified that Defendant stated that he was going to go to Florida,[11] that they went to a gas station where Defendant's "baby's mom" worked and Defendant gave her "a nice little chunk of money", and then they went to the mall where they "purchased a whole bunch of stuff, shoes and outfits and hats."[12]

---

[4] Id.
[5] Id. at page 35.
[6] Id. at page 28.
[7] Id.
[8] Id. at page 30.
[9] Id. at page 34.
[10] Id. at page 39-40.
[11] It appears this statement was made in a phone call to Mr. Aloisio, made from Mr. Probst's phone. Id. at page 50.
[12] Id. at page 41.

4

The Commonwealth then called the investigating officer as a witness and, anticipating that the officer would testify to statements made by Defendant, defense counsel objected that admission of such statements would violate the *corpus delecti* rule.

The *corpus delecti* rule requires that before an accused's statements in the nature of a confession may be admitted, two elements must be shown; "the occurrence of a specific kind of injury or loss; .... in larceny, property missing" and "somebody's criminality." Commonwealth v. Amato, 24 A.2d 681, 682 (Pa. 1942).

In the instant case, Defendant argues that because Nick Aloisio, the person who handed the money to Defendant, was not at trial to testify that he did not receive any marijuana from Defendant in exchange for the money, the theft itself could not be established. This argument is without merit. Although Aloisio did not testify at trial, Ms. Warburton's testimony that Defendant never returned to their vehicle but instead sent Nick a text message saying he was going to Florida, which testimony was confirmed by Jordan Probst, as well as Jordan Probst's testimony that he went with Defendant after Defendant received the money, that Defendant gave some of the money to his "baby's mom" and spent some of it at the mall, is sufficient to support a finding of both "property missing" and "someone's criminality".

## Admission of Text Messages

The Commonwealth presented the testimony of Police Officer Christopher Kriner, who interviewed Defendant in connection with his investigation of the theft which is the subject of this case. Officer Kriner testified that Defendant told

5

him that Nick Aloisio had requested he get him a pound and a half of marijuana, that he met with Aloisio behind the pizza place on Lycoming Creek Road where Aloisio gave him $4,000 in cash ("four stacks, $1,000 in each stack"), that he then walked over to an apartment complex behind the pizza place and made contact with a male there, that he gave the male the money "in the hopes of getting marijuana" but that the male took the money and didn't give him any marijuana. N.T., October 27, 2016 at page 69-70. When Officer Kriner asked Defendant for the name of the male, Defendant wasn't willing to provide any identifying information. Id.

In response to Officer Kriner's question of Defendant whether he had any communications with Aloisio after taking his money, Defendant told Officer Kriner that "he had text messaged him or had communication with Mr. Aloisio telling him that he burned him." Id. at page 71. When told that the officer would like to corroborate his story, Defendant "stated that there would be communication on his Facebook and in his cell phone, which he described as a black Logic Brand cell phone that would corroborate what he was saying about getting marijuana for Aloisio." Id. He then told the officer where to find the phone and provided a pass code and written consent to search the phone. Id. at page 71-72.

When the Commonwealth then attempted to introduce the content of various text messages found in Defendant's phone, defense counsel objected on the bases of failure to authenticate and hearsay. Counsel argued that unless Aloisio testified that he had sent the messages, they could not be authenticated.

6

He also argued that the messages themselves were hearsay since Aloisio was not in court to testify.[13]

Pennsylvania Rule of Evidence 901, "Authenticating or Identifying Evidence," provides in relevant part:

> (a) In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.
>
> (b) Examples. The following are examples only--not a complete list-- of evidence that satisfies the requirement:
>
> \* \* \* \*
>
> (4) Distinctive Characteristics and the Like. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.

Pa.R.E. 901(a) & (b). Thus, evidence that cannot be authenticated directly (by testimony of a witness with knowledge) may be authenticated by circumstantial evidence under subsection (4). In the context of a communication such as a text message, "subsection (4)'s 'distinctive characteristics' may include information tending to specify an author-sender, reference to or correspondence with relevant events that precede or follow the communication in question, or any other facts or aspects of the communication that signify it to be what its proponent claims." Commonwealth v. Koch, 106 A.3d 705, 712-13 (Pa. 2014), citing Commonwealth v. Collins, 957 A.2d 237 (Pa. 2008).

---

[13] Based on this argument, the court believes Defendant has objected to only those messages which are purported to have been sent by Aloisio.

7

Here, Officer Kriner testified that Defendant had told him that he had been communicating with Aloisio on his phone and that messages on his phone would corroborate his story. The messages show they were sent by "Nick"[14] and the officer, who had been qualified as an expert in the field of narcotics investigations with a specific emphasis on cellular phone communication, testified that the name of the sender "would be a name that was put into the contacts of that cell phone". Id. at page 77. It may reasonably be assumed the name "Nick" had been entered by Defendant.

Further, the content of the messages "correspond[s] with relevant events that precede or follow the communication in question":

| | | |
|---|---|---|
| 4/21/16 1:58 p.m. | from "Blade" – | "he wants 24 onions for four G's" |
| 4/21/16 2:32 p.m. | from "Nick" – | "almost to creek" |
| 4/21/16 3:00 p.m. | from "Nick" – | "you know how much longer?" |
| 4/21/16 3:05 p.m. | from "Nick" – | "I'll give you 1000 if you give it back, man" |
| 4/21/16 3:11 p.m. | from "Nick" – | "come I'll even give you 1500. Please bro, I thought we were better than this, dude" |
| 4/21/16 4:03 p.m. | from "JoJo" – | "how did you do it – he just let you walk off with his money?" |
| 4/21/16 4:16 p.m. | from "Nick" – | "well, it's shitty, you took $4000 from me but karma will get you"[15] |

---

[14] There were two messages sent by other people, but Defendant objected to only "anything sent from Mr. Aloisio's phone". N.T. October 27, 2016 at page 73.
[15] Commonwealth's Exhibits 7-A through 7-G

8

Officer Kriner testified that Defendant had told him that on that date he was staying with a male by the name of Blade Noltee and that Melissa Pratt and Jordan Probst had picked him up from Mr. Noltee's place and taken him to the pizza place on Lycoming Creek Road to meet with Nick Aloisio. Id. at page 70. This testimony, combined with the testimony from Rachel Warburton that Nick Aloisio had asked Defendant to get him a pound and a half of marijuana for $4000 and that she and Nick went to a pizza place on Lycoming Creek Road to meet Defendant for that purpose, supports a finding that the text from "Blade" is a text message from Blade Noltee relaying the request from Aloisio to Defendant that Defendant get him the marijuana, and also a finding that the text from "Nick" at 2:32 p.m. is a text message from Nick Aloisio telling Defendant he was on his way to the meeting. The remaining text messages from "Nick" are authenticated by Jordan Probst's testimony that he heard Defendant say to Aloisio that "he was heading to Florida" and "in the same conversation Nick was telling him to bring the money back and that he would give him a thousand dollars if he brought the money back." Id. at page 50.[16]

The hearsay objection is also without merit; most of the statements were not offered for the truth of the matter asserted. Although one statement arguably *was* offered for the truth of the matter ("well, it's shitty, you took $4000 from me but karma will get you"), its admission is deemed harmless error in light of the other evidence establishing the matter.

---

[16] The message from "JoJo" was not explained, but Defendant did not raise an objection to this message.

9

## Sufficiency of the Evidence

In addressing a challenge to the sufficiency of the evidence, the court is to view all of the evidence admitted at trial in the light most favorable to the Commonwealth as verdict winner, and the verdict will be upheld if there is sufficient evidence to enable the fact-finder to find every element of the crimes charged beyond a reasonable doubt. Commonwealth v. Adams, 882 A.2d 496 (Pa Super. 2005).

Defendant argues that the evidence was insufficient to establish (1) a loss, to support the charge of theft by unlawful taking, (2) that the money received was stolen, to support the charge of receiving stolen property, and (3) deception, to support the charge of theft by deception. He bases all three arguments on the fact that Nick Aloisio did not testify and without his testimony, "there was no direct testimony that Mr. Aloisio did not subsequently receive any goods or services." Post-Sentence Motion at paragraphs 57, 67 and 77.

While there may have been no direct testimony from Nick Aloisio, that Mr. Aloisio did not subsequently receive any goods or services was made abundantly clear from other evidence which *was* presented. For example, Jordan Probst's testimony that he and Defendant immediately left with the money and did not purchase any marijuana, his testimony that Defendant told Aloisio that he was going to Florida with the money, his testimony that Defendant and his compatriots went shopping with the money,[17] his testimony that Defendant gave a "nice little chunk of money" to his "baby's mom", and the evidence that Defendant had $2000 in cash (held together with a rubber band) in his backpack

---

[17] Beside the testimony to that effect, the Commonwealth also introduced photos of a substantial amount of newly purchased merchandise in shopping bags found in the trunk of the vehicle in which Defendant and the others were

10

when stopped by the police.[18] This evidence was more than sufficient to enable the fact-finder to find beyond a reasonable doubt that Defendant took the money and did not provide the marijuana, with the requisite intent to deprive Aloisio and Warburton of the money.

## Weight of the Evidence

A "weight of the evidence" claim contends the verdict is a product of speculation or conjecture, and requires a new trial only when the verdict is so contrary to the evidence as to shock one's sense of justice. Commonwealth v. Dougherty, 679 A.2d 779 (Pa. Super. 1996).

Defendant's argument in this regard is identical to his argument that the evidence was insufficient to support the verdict. Defendant contends that because Mr. Aloisio did not testify there was no "direct" evidence that he did not receive goods or services and thus, apparently, that Defendant acted with the requisite larcenous intent when he took the money. Again, even though the evidence did not come directly from Aloisio, the verdict was hardly a product of speculation or conjecture. All the evidence pointed to Defendant's guilt and the jury so found. The court's sense of justice was not at all shocked.

## Grading of the Offenses

To the extent relevant here, the Crimes Code provides that theft constitutes a felony of the third degree if the amount involved exceeds $2,000. 18 Pa.C.S. Section 3903(a.1).

---

riding when stopped, and receipts for those items showing they had been paid for in cash at about 4:30 p.m, on April 21, 2016.
[18] N.T., October 27, 2016 at page 100.

11

Defendant contends that grading the offenses here as felonies of the third degree is against the weight of the evidence, again focusing on the lack of testimony from Mr. Aloisio. Ms. Warburton testified that Aloisio gave Defendant $4000, but on cross-examination she said that "a good half of it" was her money.[19] Defendant argues that, if anything, only the amount stolen from Ms. Warburton has been sufficiently proven and therefore the Commonwealth has failed to show that more than $2000 was involved.

The court does not agree that only the amount stolen from Ms. Warburton has been sufficiently proven. For the reasons stated in discussing the sufficiency of the evidence, above, the court believes the weight of the evidence supports the jury's findings that the amount involved was more than $2000.

### Excessiveness of Sentence

Defendant contends the sentence imposed, one to four years' incarceration, is excessive because one of the victims did not testify and the other victim stated in her testimony that she did not want to be involved. Defendant argues that the court should consider the "impact on the life of the victim" to be reduced as a result. Considering, however, that the victims were attempting to purchase marijuana, most likely for re-sale, the court cannot read too much into their reluctance. In any event, to adopt Defendant's position would be to send a message to the community that theft among drug dealers is somehow considered less offensive. This the court will not do.

Furthermore, the court considered other factors in fashioning the sentence, such as Defendant's lengthy prior record and his apparent inability to respond to

---

[19] Id, at page 34.

12

efforts at rehabilitation.[20] The pre-sentence investigation concluded that Defendant had "exhausted the efforts of the programs afforded him and continues to demonstrate lack of judgment, disregard for himself and the community."[21] Considering all of the factors, the court believes the sentence was not excessive.

## ORDER

AND NOW, this 22ⁿᵈ day of March 2017, for the foregoing reasons, Defendant's Post-Sentence Motion is hereby DENIED.

BY THE COURT,

Dudley N. Anderson, Judge

cc:    DA
       Robert Cronin, Esq.
       Gary Weber, Esq.
       Hon. Dudley Anderson

---

[20] Indeed, Defendant was on parole when he committed the instant offenses.
[21] N.T., January 12, 2017 at page 8.

13

IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA

COMMONWEALTH        :   No. CR-829-2016
       vs.              :       CR-856-2016
                           :
ANDREW TUBBS,         :
     Defendant         :    CONFLICTS

AND NOW, this 11th day of October 2016, in that Attorney Robert Cronin is no longer under contract as Lycoming County conflict counsel, but is continuing to represent the defendant in above-captioned case, effective October 1, 2016, Attorney Cronin is to be compensated by the County at the rate of $60.00 per hour and reimbursed for reasonable costs incurred.

By The Court,

Marc F. Lovecchio, Judge

cc:    Robert Cronin, Esquire
       CA

MFL/bsl